UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

ROBERT F. KENNEDY, JR.,

        Plaintiff,

v.

DAVID VICKREY,

        Defendant.

Docket No. 1:23-cv-00487

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS

Defendant, David Vickrey, by and through his attorneys, Morrison Mahoney LLP, pursuant to Fed. R. Civ. P. 12(b)(2) and L.R. 7.1(a)(2), hereby submits the following Memorandum of Law in support of his Motion to Dismiss.

## I. INTRODUCTION

This is a libel lawsuit that Plaintiff, a self-described author, environmentalist, and current candidate for President of the United States of America, has filed in the State of New Hampshire for no reason other than to take advantage of New Hampshire's three-year statute of limitations for defamation lawsuits. Neither Plaintiff nor Mr. Vickrey have any connection to the State of New Hampshire. Per the Complaint, Plaintiff resides in New York, with a mailing address in California. Mr. Vickrey resides in Maine. The allegedly defamatory online blog post written by Mr. Vickrey concerns events that occurred in Germany. The Complaint filed by Plaintiff does not and cannot establish that a sufficient nexus exists between the parties and New Hampshire to allow this lawsuit to proceed. Simply stated, this lawsuit is a clear-cut example of forum shopping and nothing more. Accordingly, the Court must dismiss this lawsuit.

103196521

This lawsuit arises out of a single blog post published by Mr. Vickrey, under the pseudonym of "Downeast Dem" on the *Daily Kos* website on or about August 29, 2020. The *Daily Kos* is a progressive group blog and internet forum focused on progressive liberal United States politics. Mr. Vickrey's blog post linked to a German article describing Plaintiff's appearance at an event in Berlin, Germany. Mr. Vickrey wrote and posted this blog post from his home in Maine. The blog post did not mention New Hampshire, directly or indirectly. The blog post also did not rely on any sources located in New Hampshire. On August 29, 2023, three years to the day after Mr. Vickrey posted the subject blog post on the *Daily Kos* website, Plaintiff filed suit against Mr. Vickrey in Rockingham County Superior Court.[1] Plaintiff elected to file suit against Mr. Vickrey in New Hampshire due to its three-year statute of limitations for defamation claims.

For the reasons set forth below, this Court does not have jurisdiction over Mr. Vickrey and must dismiss this lawsuit. The record is devoid of any evidence of contacts between Mr. Vickrey and New Hampshire such that this Court may exercise personal jurisdiction over him. Mr. Vickrey has absolutely no connection whatsoever to New Hampshire. Accordingly, because Mr. Vickrey has no contacts with New Hampshire, this case does not meet the requirements of due process and must be dismissed.

## II. RELEVANT JURISDICTIONAL FACTS

1. Plaintiff is a resident of New York with a mailing address in San Diego, California. (Complaint [hereinafter "Compl.", ¶ 6.)

2. Mr. Vickrey is a resident of Cape Elizabeth, Maine. (Declaration of David, Vickrey, Ex. A, ¶ 2.)

3. Mr. Vickrey has resided in Maine since 1996. (Ex. A, ¶ 3.)

---

[1] On October 31, 2023, Mr. Vickrey removed this lawsuit from Rockingham County Superior Court to this Court.

4. Mr. Vickrey has never resided in New Hampshire. (Ex. A, ¶ 4.)

5. Mr. Vickrey has never owned real property in New Hampshire. (Ex. A, ¶ 5.)

6. Since 2003, Mr. Vickrey has published blog posts on the *Daily Kos* website under the pseudonym "Downeast Dem." (Ex. A, ¶ 6.)

7. On August 29, 2020, Mr. Vickrey posted a blog on the *Daily Kos* website. (Ex. A, ¶ 7.)

8. In the blog post, Mr. Vickrey linked to a German article concerning Plaintiff's attendance at an event in Berlin, Germany. (Ex. A, ¶ 8.)

9. Mr. Vickrey published the blog post from his home in Maine. (Ex. A, ¶ 9.)

10. The blog post did not reference or discuss New Hampshire. (Ex. A, ¶ 10.)

11. Mr. Vickrey did not speak with any sources in New Hampshire as part of his publishing of the blog post. (Ex. A, ¶ 11.)

12. Mr. Vickrey has never published a blog post on the *Daily Kos* from within the borders of New Hampshire. (Ex. A, ¶ 12.)

13. Mr. Vickrey has never engaged in any business related to or on behalf of *Daily Kos* within New Hampshire. (Ex. A, ¶ 13.)

14. The tortious conduct in which Plaintiff alleges Mr. Vickrey engaged occurred exclusively from his home in Maine. (Ex. A, ¶ 14.)

15. On or about May 12, 2023, Mr. Vickrey received a letter from Attorney Robert E. Barnes of Barnes Law in Los Angeles, California. (Ex. A, ¶ 15.)

16. Attorney Barnes's letter included a draft Complaint that Mr. Kennedy intended to file against Mr. Vickrey in the United States District Court for the Southern District of New York. (Ex. A, ¶ 15.)

17. Upon information and belief, Plaintiff never filed the threatened defamation lawsuit against Mr. Vickrey in New York. (Ex. A, ¶ 15.)

## III. STANDARD OF REVIEW

It is well settled that a court must obtain *in personam* jurisdiction over a defendant before it has the power to adjudicate a claim against that defendant. Pennoyer v. Neff, 95 U.S. 714, 719-21 (1877). In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of "establishing that jurisdiction exists over the non-resident defendant[s]." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2001) (internal citations omitted). In the absence of an evidentiary hearing, a plaintiff must make a *prima facie* showing that jurisdiction exists. See Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986). "[T]o defeat a motion to dismiss, plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record." D'Jamoos v. Atlas Aircraft Center, Inc., 669 F.Supp.2d 167, 169 (D.N.H. 2009) (internal citations omitted). "In reviewing the record before it, the court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Id. (internal citations omitted).

## IV. ARGUMENT

**A. The Court Must Grant Mr. Vickrey's Motion to Dismiss Because the Court Lacks Personal Jurisdiction Over Mr. Vickrey Pursuant to New Hampshire's "Long-Arm" Statute and the Due Process Clause of the 14th Amendment to the United States Constitution**

In a diversity case like the instant case, "the district court's power to assert personal jurisdiction over a nonresident defendant is limited by the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." Gray v. St. Martin Press, 929 F.Supp. 40, 44 (D.N.H. 1996). New Hampshire has interpreted its long-arm statute as "authorizing the assertion

4

of personal jurisdiction over nonresident tortfeasors to the full extent allowed by the Due Process Clause." Id. (citing Phelps v. Kingston, 130 N.H. 166, 171 (1987)). Therefore, it would not be inappropriate to proceed directly to a Due Process analysis. See e.g., Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211, 215 (D.N.H., Barbadoro, J, 2000).

Under the Due Process Clause, "[a] court may exercise either general or specific personal jurisdiction over a defendant." D'Jamoos, 669 F.Supp.2d at 170. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Specific personal jurisdiction, on the other hand, only "exists when the plaintiff's cause of action arises directly out of, or relates to, the defendant's forum-based contacts." D'Jamoos, 669 F.Supp.2d at 170.

As noted above, specific personal jurisdiction exists when a Plaintiff's cause of action arises directly out of, or relates to, the defendant's forum-based contacts. In order to determine whether specific personal jurisdiction exists, the First Circuit has formulated the following three-prong test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's instate contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court's foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089. "An affirmative finding as to each of those three elements—relatedness, purposeful availment, and reasonableness—is necessary to support the court's exercise of specific personal jurisdiction. D'Jamoos, 669 F.Supp.2d at 170.

5

1. **<u>Mr. Vickrey Lacks Any Contacts with the State of New Hampshire</u>**

The relatedness prong of the tri-partite test requires a Plaintiff to "show a nexus between [the plaintiff's] claim and [a defendant's] forum-based activities. <u>A Corp. v. All Am. Plumbing, Inc.</u>, 812 F.3d 54, 58 (1st Cir. 2016); <u>see also</u> <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 206 (1st Cir. 1994) ("We know to a certainty . . . that the requirement focuses on the nexus between defendant's contacts and the plaintiff's cause of action."). For personal jurisdiction to lie, "the action must arise out of specific contacts between the defendant and the forum." <u>United States v. Swiss Am. Bank</u>, 274 F.3d 610, 621 (1st Cir. 2001). The First Circuit has specifically cautioned against conflating the relatedness requirement with the effects test for purposeful availment, finding "[t]hat the plaintiff felt the effects of the defendants' activities in the forum does not, alone, qualify as related contacts." <u>Reynolds v. Invivo Therapeutics Holdings Corp., et al.</u>, 2016 WL 6997489, at *3 (D.N.H. 2016) (<u>citing</u> <u>Swiss Am. Bank</u>, 274 F.3d at 622-23).

In determining whether personal jurisdiction exists, courts must "hone in on the relationship between the defendant and the forum." <u>Id.</u> (internal citations and quotations omitted). Furthermore, since the purpose of the relatedness prong is to ensure that "the element of causation remains in the forefront of the due process investigation," the "relatedness requirement . . . authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed." <u>Ticketmaster-NY</u>, 26 F.3d at 207.

Plaintiff has failed to establish that Mr. Vickrey has the necessary contacts with New Hampshire to justify forcing him into litigation before a New Hampshire court. The only allegation of a connection between Plaintiff's claim and Mr. Vickrey's alleged contacts with New Hampshire is Plaintiff's claim that Mr. Vickrey published the blog post in New Hampshire, which is untrue.

(Ex. A, ¶ 9.) The United States Supreme Court has stated than an out-of-state reporter's contacts with a forum state "are not to be judged according to their employer's activities there." Calder v. Jones, 465 U.S. 783, 790 (1984). Rather, "[e]ach defendant's contacts with the forum state must be assessed individually." Id. As discussed above, Mr. Vickrey is a resident of Maine and published the blog post from his home in Maine. (Ex. A, ¶ 2, 9.) He did not speak with any New Hampshire-based sources to prepare the blog post at issue in this lawsuit. (Ex. A, ¶ 11.) Mr. Vickrey has never lived in New Hampshire. (Ex. A, ¶ 4.) Simply stated, the Complaint contains "no allegations, and . . . no evidence, that [Mr. Vickrey] contacted New Hampshire residents to communicate false statements." NeoDevices, Inc. v. NeoMed, Inc., 2009 WL 689881, at *5 (D.N.H. 2009). Accordingly, Plaintiff cannot satisfy the relatedness prong and dismissal is warranted.

### 2. Mr. Vickrey Has Not Purposely Availed Himself of New Hampshire Law

Even if Plaintiff had satisfied the relatedness requirement—which he has not—this Court still cannot exercise personal jurisdiction over Mr. Vickrey because Plaintiff cannot demonstrate that Mr. Vickrey's posting of the alleged defamatory blog post constituted the purposeful availment of the benefits and protections afforded by New Hampshire's laws.

The First Circuit has adopted the Calder "effects test" for determining purposeful availment in the context of defamation cases. See Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998). The effects test requires a plaintiff to demonstrate that a defendant "aimed an act at the forum state, knew the act would likely have a devastating effect, and knew the injury would be felt" in the forum state. Accordingly, to establish purposeful availment under Calder in this case, Plaintiff must show that (1) he felt the injurious effects of Mr. Vickrey's alleged tortious act in New Hampshire and (2) that Mr. Vickrey's act was calculated to cause injury to Plaintiff in New

Hampshire.  Farquharson v. Metz, 2013 WL 3968018, at *2 (D. Mass. 2013) (quoting Swiss Am. Bank, 274 F.3d at 632-33 (Lipez, J., dissenting)).

### a. The Allegedly Harmful Effects of the Blog Post Were Not Felt in New Hampshire

Plaintiff falls short on the first purposeful availment hurdle, because he cannot satisfy the "injurious-effects" portion of the Calder test, which requires Plaintiff to show that he "felt a tortious effect" of the blog post in New Hampshire.  Noonan, 135 F.3d at 90.  "This test, unlike that for relatedness, focuses on the location at which the effects of the alleged defamation are directed and where they are felt."  Reynolds, 2016 WL 6997489, at *4.

In Calder, the *National Enquirer*, a Florida-based publication, published an allegedly defamatory article concerning actress Shirley Jones.  Calder, 465 U.S. at 784.  Ms. Jones sued *National Enquirer* in California, and the United States Supreme Court held that personal jurisdiction extended to the journalists who wrote the story because their "intentional, and allegedly tortious, actions were expressly aimed at California."  Id. at 789.  The Court elaborated as follows:

> The allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, and the brunt of the harm, in terms of both [Jones'] emotional distress and the injury to her professional reputation, was suffered in California.  In sum, California is the focal point of both the story and of the harm suffered.  Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California.

Id. at 788-89.  The Court also found persuasive the fact that the *National Enquirer* had its largest circulation in California and reported extensively on the entertainment industry based in California.  Id. at 789-90.  Ultimately, "[t]he crux of Calder was that the reputation-based 'effects'

8

of the alleged libel connected the defendants to California, not just to the plaintiff." Walden v. Fiore, 571 U.S. 277, 287 (2014).

In the instant case, nothing in Mr. Vickrey's blog post remotely suggests that Mr. Vickrey was targeting New Hampshire. The blog post did nothing more than link to a German article concerning Plaintiff's appearance at an event in Berlin, Germany. Plaintiffs cannot meet a single Calder benchmark that would indicate that Mr. Vickrey intended for New Hampshire to be "the focal point both of [the blog post] and of the harm suffered." Calder, 465 U.S., at 789. The blog post published by Mr. Vickrey makes no direct or indirect reference to New Hampshire or New Hampshire residents. To the extent Plaintiff is referenced in the blog post, it refers to his appearance at an event in Berlin, Germany, approximately 3,375 miles from the easternmost point of New Hampshire. Plaintiff resides in New York and has a mailing address in California, and has not alleged the existence of any business activities in New Hampshire nor relationships with New Hampshire residents. As a result, Plaintiff's reputation is "centered", if anywhere, in New York or California, but clearly not in New Hampshire. As noted above, Mr. Vickrey did not speak with or otherwise consult with any sources in New Hampshire as part of his preparation and posting of the blog post. Considering all of these factors, it is clear that neither Plaintiff nor the blog post has even the most remote of connections with New Hampshire. This alone is fatal under the Calder effects test.

Even assuming *arguendo* that Plaintiff was a resident of New Hampshire or had some other connection to the State, Plaintiff still cannot establish that he suffered any injury in New Hampshire, as he must. See Reynolds, 2016 WL 6997489, at *4. In Reynolds, the plaintiff lived and worked in New Hampshire, and alleged that former Massachusetts business partners had defamed him through press releases and statements allegedly distributed via the internet. Id. at *6.

9

In his Complaint, the plaintiff alleged, without support, that the alleged defamatory statements of the defendants had caused him to be denied from a New Hampshire organization and further prevented him from obtaining additional funding from a Massachusetts organization. Id. While the plaintiff claimed that these allegedly-defamatory statements affected his New Hampshire business and personal lives, this Court found that "these allegations support a conclusion that [the plaintiff] suffered reputational damage in Massachusetts, but not that he did so in New Hampshire." Id. Accordingly, this Court held that the plaintiff, a New Hampshire resident, had failed to demonstrate that the harm to his reputation caused by statements made out-of-state was "felt in New Hampshire" as he was required to do. Id.

Here, Plaintiff is not a New Hampshire resident and has not pleaded any injury specific to New Hampshire. Rather, he has generically alleged that Mr. Vickrey's alleged defamatory blog post has damaged his reputation in New Hampshire. It is also worth noting that before filing suit in New Hampshire, an attorney purportedly representing Plaintiff sent correspondence to Mr. Vickrey informing Mr. Vickrey of Plaintiff's intent to sue Mr. Vickrey in New York. (Ex. A, ¶ 15.) In the draft Complaint included with that letter, Plaintiff alleged that Mr. Vickrey's alleged defamatory statement was intended to injure Plaintiff's reputation in New York and makes no reference whatsoever to New Hampshire. This provides further support to Mr. Vickrey's position that Plaintiff has suffered no appreciable harm in New Hampshire and has elected to file here for no other reason that New Hampshire's longer statute of limitations for defamation claims. If the plaintiff in Reynolds, who in fact resided and worked in New Hampshire, could not show that the brunt of the harm to his reputation was felt in New Hampshire, Plaintiff in the instant case, with no connection whatsoever to New Hampshire, has failed to "establish[] that the effects of [Mr. Vickrey's] conduct [was] felt in New Hampshire." Id.

In sum, because neither Mr. Vickrey's blog post nor Plaintiff himself have any connection to New Hampshire, Plaintiff cannot satisfy the Calder effects test requirement that the harm allegedly caused by Mr. Vickrey be focused on and felt in New Hampshire.

### b. Mr. Vickrey's Blog Post Was Not Calculated to Cause Injury to Plaintiff in New Hampshire

Even assuming *arguendo* that Plaintiff could demonstrate that Mr. Vickrey's blog post harmed him in New Hampshire, the Court still cannot exercise personal jurisdiction because Plaintiff cannot demonstrate that Mr. Vickrey's alleged intentional conduct was "calculated to cause injury to respondent in [New Hampshire]." Noonan, 135 F.3d at 90 (quoting Calder, 465 U.S. at 791) (finding lack of personal jurisdiction even though plaintiff felt the brunt of the harm from a defamatory statement in the forum jurisdiction). The only conceivable basis for finding that Mr. Vickrey intended to harm Plaintiff in New Hampshire is the availability of the blog post to residents of New Hampshire. However, this is insufficient to demonstrate purposeful availment.

The Supreme Court's decision in Keeton v. Hustler Magazine, 465 U.S. 770 (1984), guides the exercise of jurisdiction based on distribution. As the First Circuit has noted, Keeton stands for the proposition that "[t]he size of a distribution of offending material helps determine whether a defendant acted intentionally." Noonan, 135 F.3d at 91. However, Keeton does not create a basis for imposing jurisdiction over Mr. Vickrey based on the extremely limited readership of the blog post within New Hampshire. In Keeton, the Supreme Court upheld a finding of personal jurisdiction in New Hampshire over the publisher of *Hustler* magazine, even though the plaintiff was from New York and the defendant was an Ohio corporation based in California. Keeton, 465 U.S. at 772. This was because *Hustler* distributed no fewer than 10,000-15,000 copies of the magazine to New Hampshire every month. Id. Considering that volume of subscriptions, the Supreme Court held that "such regular monthly sales of thousands of magazines cannot by any

11

stretch of the imagination be characterized as random, isolated, or fortuitous." Id. at 774.  Since *Hustler* "continuously and deliberately exploited the New Hampshire market," the Supreme Court held that there was "no unfairness in calling it to answer for the contents of [its] publication wherever a substantial number of copies are regularly sold and distributed."

The First Circuit has limited the scope of out-of-state libel cases.[2]  In Noonan, an out-of-state publisher distributed approximately 305 copies of a magazine containing an allegedly defamatory advertisement within Massachusetts.  Noonan, 135 F.3d at 88.  Noting that "[t]he Supreme Court has held that a publisher's regular circulation of a large number of magazines containing allegedly libelous content in a forum state indicated deliberate and continuous exploitation of a market," the First Circuit reasoned that "[j]ust as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact." Id. at 91.  As a result, the First Circuit held that the distribution of approximately 305 magazines, in and of itself, "does not merit a finding that Massachusetts was the focal point of the events in question," or that the advertisements were aimed toward Massachusetts.  Id.

The fact that Mr. Vickrey's blog post was made freely available on *Daily Kos* does not affect the Court's analysis under Keeton and Noonan.  The First Circuit has held that "the mere availability of a passive website . . . cannot, standing alone, subject a defendant to personal jurisdiction in [a foreign] forum." A Corp., 812 F.3d at 61.  In fact, "[t]he overwhelming weight of authority holds that merely operating a website—even if it is a popular website that makes money from advertising . . .—does not constitute 'purposeful availment'" for the purposes of hailing an out-of-state libel defendant into a foreign court.  Trump v.Tarpley, 2016 WL 4580164

---

[2] Consistent with its holding in Noonan, the First Circuit has "rejected the 'stream of commerce' theory of personal jurisdiction" under which personal jurisdiction can be premised on a defendant's release of a product into the forum state's stream of commerce.  Christian v. Barricade Books, 2003 WL 21146168, at *4 (D.N.H. 2003).

(Md. Cir. Ct. 2016). The section of *Daily Kos* in which Mr. Vickrey's blog post appears is a classic "passive" website as defined by the Zippo sliding scale, insofar as it "does little more than make information available to those who are interested in it." Zippo Mfg. Co. v. Zippo Dot Com, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). As a result, Mr. Vickrey's posting of the subject blog post "to the internet at large, even if read by non-plaintiff residents of the forum state [was not] specifically directed at the forum absent some indication that they were directed at those residents." Reynolds, 2016 WL 6997489 at *6. See also Sig Sauer, Inc. v Jeffrey S. Bagnell, LLC, et al., 615 F.Supp.3d 39, 45-46 (D.N.H. 2022) (holding that plaintiff in defamation suit against out-of-state law firm failed to establish purposeful availment when defendant's allegedly defamatory video was uploaded to YouTube, but did not target or mention New Hampshire in any capacity); Johnson v. TheHuffingtonPost.com, 21 F.4th 314, 319-20 (5th Cir. 2021) (holding that plaintiff could not exercise personal jurisdiction over Huffington Post website when allegedly defamatory discussed a meeting occurring outside of Texas and did not mention Texas nor involve any Texas sources). There is no indication from *Daily Kos* that New Hampshire citizens were the intended recipients of Mr. Vickrey's blog post. The blog post discussed an appearance by Plaintiff in Germany and in no way discussed or concerned New Hampshire. There likewise were no New Hampshire-related advertisements. These factors all suggest the lack of purposeful contact with New Hampshire based upon the posting of the blog.

In sum, Mr. Vickrey's posting of the blog to *Daily Kos* does not give rise to personal jurisdiction over Mr. Vickrey in New Hampshire. To hold otherwise "could improperly erode important limits on personal jurisdiction over out-of-state defendants."

### 3. It is Unreasonable to Exercise Personal Jurisdiction Over Mr. Vickrey In New Hampshire

Even assuming Plaintiff can establish relatedness and purposeful availment—which he cannot—the Court should allow Mr. Vickrey's motion under the third prong because it is unreasonable to extend personal jurisdiction over Mr. Vickrey in New Hampshire. In assessing reasonableness, the First Circuit looks the following "gestalt factors":

> (1) the defendant's burden of appearing in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interests in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster-NY, 26 F.3d at 209 (listing the five "gestalt factors"). When applying the gestalt factors, "the weaker the plaintiff's showing on the first two prongs . . . the less a defendant need to show in terms of unreasonableness to defeat jurisdiction." Where, as here, Plaintiff has essentially zero evidence to establish the first two prongs, Mr. Vickrey's threshold for demonstrating unreasonableness is low. Nevertheless, the reasonableness factors favor Mr. Vickrey and compel the dismissal of this lawsuit.

#### a. **Defendant's Burden of Appearing**

First, it would be patently unfair to impose on Mr. Vickrey the burden of litigating in New Hampshire, a state in which he has never resided and to whose laws Mr. Vickrey is a stranger. The First Circuit has noted that the first gestalt factor weighs in favor of dismissal when "the inconvenience to the defendant may not be coincidental." Id. at 210-11. As discussed at the outset of this Memorandum of Law, Plaintiff's decision to file this lawsuit in New Hampshire is clearly a calculated effort to seek out a more favorable statute of limitations for a lawsuit that Plaintiff would be barred from pursuing in nearly every other jurisdiction in the United States. Plaintiff should not be rewarded for his forum shopping activities with a finding of personal jurisdiction

over Mr. Vickrey in a state in which he does not live, work, or have any other connections, at a courthouse located 120 miles from Mr. Vickrey's home. Considering these factors, the first gestalt factor weighs heavily in favor of Mr. Vickrey.

### b. State's Interest in Adjudicating the Dispute

The second gestalt factor likewise weighs heavily in favor of Mr. Vickrey. As discussed above, neither Plaintiff nor Mr. Vickrey reside in New Hampshire nor conduct any other business in New Hampshire. As a result, New Hampshire has minimal, if any, interest in protecting the reputations of individuals who do not reside or work within the state. Moreover, the fact that this lawsuit appears retaliatory and opportunistic further diminishes any legitimate interest that New Hampshire may have in exercising personal jurisdiction. See Ticketmaster-NY, 26 F.3d at 211. Considering these factors, the second gestalt factor likewise favors Mr. Vickrey.

### c. Plaintiff's Interest in Obtaining Convenient Relief

The convenience of Plaintiff litigating this lawsuit in New Hampshire is no different than that of Mr. Vickrey. Plaintiff does not reside or work in New Hampshire, and any evidence of the alleged harm done to his reputation presumably would be as readily available in another jurisdiction other than New Hampshire. As noted above, Plaintiff clearly has elected to file suit in New Hampshire for no reason other than to take advantage of the state's extended statute of limitations. Plaintiff should not be rewarded for this type of forum shopping by allowing this lawsuit to proceed.

### d. Policy Arguments

Public policy considerations weigh heavily against the exercise of personal jurisdiction over Mr. Vickrey. Holding that an out-of-state Defendant like Mr. Vickrey may be sued by an out-of-state Plaintiff merely for writing a blog post in another state, without any evidence of

15

tortious conduct within the state, would not be consistent with any state's interests in protecting the constitutional rights of its citizens, both as to free speech and due process. Therefore, the application of the policy "gestalt factors" also weights against the exercise of personal jurisdiction over Mr. Vickrey.

### B. The Exercise of General Jurisdiction Over Mr. Vickrey is Improper Because Mr. Vickrey Has Not Engaged in Continuous and Systematic Activity Within New Hampshire and is not Domiciled in New Hampshire

"A court may exercise general jurisdiction over a defendant even when the cause of action is not related to the defendant's forum-based conduct, provided that the defendant has engaged in the continuous and systematic pursuit of general business activities in the forum state." Dagesse, 113 F.Supp.2d at 218 (internal quotations and citations omitted). In other words, "an exercise of general jurisdiction does not require relatedness, but it does require that the defendant's contacts with the forum state be considerably more extensive than the 'minimum contacts' necessary for specific jurisdiction." Id. (internal citations omitted).

The United States Supreme Court has "made clear that only a limited set of affiliations with a forum state will render a defendant amenable to [general] jurisdiction there." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." Power v. Connectweb Technologies, Inc., 648 F.Supp.3d 302, 314 (D. Mass. 2023) (internal citations and quotations omitted). Here, as discussed above, Mr. Vickrey has resided in Maine for over 25 years. Furthermore, Mr. Vickrey's blog post had nothing to do whatsoever with New Hampshire. The blog post was written and posted in Maine and did not concern New Hampshire nor its residents. As a result, general personal jurisdiction does not apply.

16

## V. **CONCLUSION**

The record before the Court establishes that Mr. Vickrey is not subject to specific or general personal jurisdiction in New Hampshire. The claims against Mr. Vickrey do not relate to, or arise from, his contacts with New Hampshire. Furthermore, Mr. Vickrey has not engaged systematic and continuous activity within New Hampshire, nor is he domiciled in New Hampshire, such that the exercise of general personal jurisdiction would be appropriate. Therefore, Mr. Vickrey respectfully requests that this Honorable Court dismiss the Complaint against Mr. Vickrey for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

          Respectfully submitted,

          DAVID VICKREY

          By His Attorneys,

          MORRISON MAHONEY LLP

November 1, 2023    By  /s/ *Brian A. Suslak*
          Brian A. Suslak, #269917
          bsuslak@morrisonmahoney.com
          Center of New Hampshire Office Tower
          650 Elm Street, Suite 201
          Manchester, NH 03101
          Phone:  603-622-3400
          Fax:  603-622-3466

## **CERTIFICATE OF SERVICE**

  I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 1, 2023.

          /s/ Brian A. Suslak
          Brian A. Suslak, #269917