## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

ROBERT F. KENNEDY, JR.,    )
                                          )    Case No.
                                          )    1:23-cv-00487
            Plaintiff,         )
                                          )
vs.                                  )
                                          )
                                          )
DAVID VICKREY,             )
                                          )
            Defendant.       )
                                          )
_____)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
## <u>MOTION TO DISMISS</u>

## I.     <u>INTRODUCTION</u>

Defendant ran a multi-year defamation and libel campaign against Robert Kennedy, which defendant chose to elevate and escalate after Kennedy announced his primary campaign for the Presidency focused on New Hampshire. As discovery will show, the defendant conducts business in New Hampshire, provides services in New Hampshire, and continually solicits business in New Hampshire. The defendant used his interactive blog to attack Robert Kennedy to New Hampshire residents with the goal of hurting Kennedy's reputation in New Hampshire. Indeed, the Defendant's interactive blog site, *Daily Kos*, emailed New Hampshire residents, soliciting donations to the site, to contest Kennedy and support a Biden write-in campaign, quoting and citing the defendant's defamatory publications, and republishing those defamatory comments in New Hampshire.

As such, under the Supreme Court's *Calder* effects test, this Court has in personam jurisdiction over the defendant for his defamatory publications published in New Hampshire to New Hampshire residents seeking to knowingly cause reputational injury to Robert Kennedy in New Hampshire. Independently, before dismissal could occur, the proper path is for the court to permit jurisdictional discovery in aid of an evidentiary hearing prior to adjudicating the motion to dismiss.

## II.  JURISDICTIONAL FACTS[1]

On August 29, 2020, Defendant[2] first posted a blog about Mr. Kennedy[3] on an interactive blog message board called the *Daily Kos*, falsely accusing Mr. Kennedy of collaborating with neo-Nazis by speaking at a protest in Berlin, Germany (hereinafter the "Defamatory Article"). Decl. Vickrey[4], ¶¶ 7 and 8; Complaint[5], ¶ 2. The *Daily Kos* website is, by its own description, an interactive web site and message board for political activists focusing on "influenc[ing][] the electoral process" and "[p]utting public pressure on" politicians in the United States.[6]  More specifically, the *Daily Kos* website describes itself as follows:

---

[1] Plaintiff requests this Court to take judicial notice of the internet posts cited in support of the jurisdictional facts set forth herein, pursuant to Federal Rules of Evidence, Rule 201(b), for the limited purpose of ruling on Defendant's Motion To Dismiss. *Chhetry v. U.S. Dept. Justice* (2nd Cir. 2007) 490 F3d 196, 199-200.

[2] "Defendant" or "Mr. Vickrey" refers herein to defendant David Vickrey.

[3] "Plaintiff" or "Mr. Kennedy" refers herein to plaintiff Robert F. Kennedy, Jr.

[4] "Decl. Vickrey" refers herein to the Declaration of David Vickrey in support of Defendant's Motion to Dismiss, filed November 1, 2023, ECF No 5-2.

[5] "Complaint" refers herein to the Complaint and Demand For Jury Trial filed by Mr. Kennedy in the Superior Court of the State of New Hampshire on August 29, 2023, docket no. 218-2023-CV-01019, a true and correct copy of which is attached as Exhibit A to Defendant's Notice of Removal filed in this Court on October 31, 2023, ECF No 1.

[6] Daily Kos home page, available at:
https://www.dailykos.com/

"giv[ing] readers the information they need to effectively engage in, and influence, the electoral process. … Putting public pressure on elected officials with petitions, letters, phone calls, texts, and other means are important tools in our democracy."[7]

As of 2014, the *Daily Kos* website had an average weekday traffic of hundreds of thousands of viewers and blog-posters.[8] In the mid-2010s, the *Daily Kos* website received more than half a million in direct political campaign donations as a result of their email campaigns.[9] Indeed, the *Daily Kos* has and continues to be instrumental in influencing New Hampshire voters in political election campaigns to this day. Just one example is a post authored by Hal Rafter, recently elected as New Hampshire State Representative for Rockingham District 1, thanks principally to the fundraising and campaign efforts through the *Daily Kos*, as stated in Mr. Rafter's own words:

"I would like to thank the Daily Kos community for all their support during my recent special election for the New Hampshire House. Everyone who worked on my campaign is grateful for the extraordinary help which made it possible for us to do outreach that would otherwise have been impossible. … Without Daily Kos support, the outcome of this election could have been much different. ¶ And more good news, we have enough money left to finance an

---

[7] Daily Kos "about us" page, available at:
https://www.dailykos.com/about-us

[8] Available at:
https://en.wikipedia.org/wiki/Daily_Kos#cite_note-10

[9] Huffington Post, *Daily Kos Is Back*, Apr 12, 2017, available at:
https://www.huffpost.com/entry/daily-kos-is-back_n_58ee985ce4b0da2ff85de500

effective campaign next year."[10]

Mr. Vickrey has been an active publisher of blog posts on the *Daily Kos* website for over 20 years, since 2003, under the pseudonym "Downeast Dem." Decl. Vickrey, ¶ 6. Mr. Kennedy is a candidate for the Presidential election in 2024. As soon as Mr. Kennedy announced his primary challenge, Vickrey reshared and republished his Defamatory Article that falsely stated: "Anti-Vaxxer RFK JR. joins neo-Nazis in massive Berlin 'Anti-Corona' Protest." Decl. Vickrey, ¶¶ 7 and 8; Complaint ¶ 11. The Defamatory Article further stated falsely that:

> "The protest was organized by right-wing extremist organizations –
> including the AfD party and various anti-Semitic conspiracy groups as
> well as the neo-Nazi NPD party. Among the speakers was Robert F.
> Kennedy Jr., who warned against the 'totalitarianism' of Angela
> Merkel." *Ibid.*

To this day, Mr. Vickrey flippantly plows on in his smear campaign of Mr. Kennedy, stating that in 2020: "I wrote [a post] about his speech in Berlin that was organized by a right-wing extremist group."[11]

Mr. Vickrey worked for eight years as the vice president for a company

---

[10] Daily Kos, *Greetings and Gratitude from NH*, Nov 27, 2023, available at: https://www.dailykos.com/stories/2023/11/27/2208374/-Greetings-and-Gratitude-from-NH?utm_campaign=recent

[11] Daily Kos, *RFK Jr. threatens DKos diarist: Pay me $1 million or else!*, Aug 26, 2023, available at: https://www.dailykos.com/stories/2023/8/26/2189756/-RFK-Jr-threatens-DKos-diarist-Pay-me-1-million-or-else

headquartered in Nashua, New Hampshire, named SkillSoft. Complaint, ¶ 7.[12] Mr.

Vickrey presently works at Seabridge Advisors LLC, a corporate development

services company that holds itself out as a "New England-Based – Global Reach"

entity. *Ibid.* During the events that form the basis for this civil action and

afterward, Mr. Vickrey did and continues to do business in the State of New

Hampshire, arising in large part from the professional contacts he formed and

nurtured during his eight years as vice president at SkillSoft. Complaint, ¶ 7.

As of 2020, Mr. Kennedy has focused his campaign on New Hampshire,

because New Hampshire is commonly one of the first, if not the first, state to hold

presidential primaries.[13] The Defamatory Article published by Mr. Vickrey was

specifically targeted to voting residents of New Hampshire, in order to derail Mr.

Kennedy's 2024 Presidential campaign, even spawning the launch of current

President Biden's write-in campaign for the State of New Hampshire Democratic

---

[12] *See also* Mr. Vickrey's professional bio, available at:
https://www.seabridgeadvisors.com/about
*See also* business description of SkillSoft with its corporate U.S. headquarters in
New Hampshire, available at:
https://www.skillsoft.com/about/contact-us

[13] Mr. Kennedy's team's targeting of New Hampshire proved prescient, as the state
recently announced it would indeed be the first to hold its presidential primaries on
January 23, 2024. *See* New Hampshire Bulletin, *New Hampshire sets Jan. 23
presidential primary date, the first in the nation*, Nov 16, 2023, available at:
https://newhampshirebulletin.com/2023/11/16/new-hampshire-sets-jan-23-
presidential-primary-date-the-first-in-the-nation/

primary election.[14] Additionally, Mr. Vickrey's Defamatory Article prompted the *Daily Kos* to actively solicit New Hampshire residents to fund Mr. Vickrey's legal defense of the instant action due to this New Hampshire focus.[15]

### III.   LEGAL STANDARD

In deciding a motion to dismiss for lack of personal jurisdiction, the court has "considerable procedural leeway." It may (a) decide the motion on the face of the complaint; (b) decide the motion on undisputed facts established by affidavits alone; (c) permit discovery in aid of the motion; (d) conduct an evidentiary hearing on the merits; or (e) defer the matter until trial. *See Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A.* (2nd Cir. 2013) 722 F3d 81, 84-85 ("*Dorchester*").

The plaintiff bears the initial burden of showing that there are sufficient minimum contacts between the defendant and the forum state. However, the plaintiff often needs to conduct discovery to make a sufficient showing of defendant's contacts with the forum state. Accordingly, case law holds that when a motion to dismiss is made at the outset of the case, the best practice is for the court to continue the hearing in order to permit such discovery. See *Orchid Biosciences,*

---

[14] Daily Kos, '*Write-In Biden' campaign launched in New Hampshire*, Oct 30, 2023, available at:
https://www.dailykos.com/stories/2023/10/30/2202528/--Write-In-Biden-campaign-launched-in-New-Hampshire

[15] Daily Kos, *Is it ever once and done?*, Jul 1, 2023, available at:
https://www.dailykos.com/stories/2023/7/1/2178729/-Is-it-ever-once-and-done

*Inc. v. St. Louis Univ.* (SD CA 2001) 198 FRD 670, 672-673; *Repwest Ins.Co. v. Praetorian Ins. Co.* (D AZ 2012) 890 F.Supp.2d 1168, 1184. Upon the plaintiff meeting its initial burden, the burden then shifts to defendant to set forth a "compelling case" that the exercise of personal jurisdiction would not be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.* (9th Cir. 2011) 653 F3d 1066, 1076.

The Supreme Court has already established the precedent that Due Process permits personal jurisdiction over a defendant whose libels are published to readers in the state of New Hampshire, and whose libels cause reputational injury in that state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Like the defendant in the *Keeton* case, Defendant here regularly publishes to New Hampshire audiences.

It is also important to note that the vast majority of published decisions on the requisite minimum contacts to support personal jurisdiction, arose in the pre-Internet context of geographical boundaries when most if not all contacts could be readily characterized as physical. Today, the ubiquitous use of the Internet, a medium that exists in hyperspace, has created challenges for courts attempting to determine if they have jurisdiction over nonresident defendants for contacts that are inherently virtual in nature. For these reasons, many Circuit Courts have recognized there may be a need to refine or reconsider how they evaluate electronic contacts as a basis for personal jurisdiction over nonresidents. *See, e.g.*,

*McBee v. Delica Co., Ltd.,* 417 F.3d 107, 124 (1st Cir. 2005) [implicitly adopting the interactivity features of defendant's website as the requisite test in an extraterritorial application of jurisdiction in a Laham Act case]; *Unspam Technologies, Inc. v. Chernuk* 716 F3d 322, 328 (4th Cir. 2013) [standards for determining personal jurisdiction are evolving to accommodate nature of Internet]; *uBID, Inc. v. GoDaddy Group, Inc.* (7th Cir. 2010) 623 F3d 421, 431 (7th Cir. 2010) ["a physical geographical nexus is simply less important in cases where the alleged harm occurred over the Internet."].

In the context of suits alleging intentional torts such as libelous statements by non-forum-state defendants like this one, the Supreme Court holds that the "reputation-based 'effects'" test set forth in *Calder v. Jones,* 465 U.S. 783, (1984) ("*Calder*") controls. A holding it reaffirmed in its decision in *Walden v. Fiore,* 571 U.S. 277, 285 (2014) ("*Walden*") ["The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff"].

Specifically, as explained in the case of *Helali v. Legarde,* 2022 WL 110685, No. 2:21-cv-00141 (US Dist. Ct. D. Vermont, Jan 11, 2022) ("*Helali*"): "'The 'effects test' theory of personal jurisdiction is typically invoked where the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum

effects harmful to the plaintiff.' [citing *Charles Schwab Corp. v. Bank of Am. Cop.,* 883 F.3d 68, 87 (2ⁿᵈ Cir. 2018)]" *Id.,* at \*6.

The *Helali* decision went on to explain that as held by the Supreme Court in *Calder*, the "reputation-based 'effects'" of the defamatory statement is what controls personal jurisdiction analysis, and not the residence of the plaintiff:

> "The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred in California. ***In this way, the "effects" caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there***. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." (emphasis added) *Helali, supra,* 2022 WL 110685, at 6 [citing *Walden, supra,* 571 U.S. at 286-288].

Finally, the *Helali* court explained that, in the context of libel actions arising from defamatory statements made over the internet:

> "While simply posting on the internet may not be enough to show conduct was expressly aimed at [the forum state], Plaintiff alleges [the defendant] targeted [forum state] residents with her online posts and other communications which were intended to have harmful effects on Plaintiff in [the forum state]." *Id.,* at \*7.

Applying the above-discussed Supreme Court standards for determining personal jurisdiction over out-of-state defendants whose "reputation-based effects'" are targeted toward the forum state, the *Helali* court properly found that the plaintiff's pleadings in that case alleged sufficient minimum contacts with the forum state to warrant specific personal jurisdiction. *Helali, supra,* 2022 WL 110685*,* at *7. Similarly, in *de Laire v. Voris,* 2021 WL 1227087 (D. New Hampshire April 1, 2021) the court held:

> "In the context of internet-based defamatory communications, including websites, relatedness is established if the defamatory communications were made available in the forum state and were viewed or apprehended there. Scottsdale Cap. [citing *Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 21 (1st Cir. 2018); *Brown v. Dash*, 2020 WL 6806433, at *9 (D. Mass. Nov. 18, 2020); *Narcisi v. Turtleboy Digital Marketing, LLC*, 2020 WL 5258491, at *3 (D.R.I. Sept. 3, 2020). When the defamatory materials are publicly available to a sufficient number of people, the court may presume that at least one person, other than the plaintiff, viewed and apprehended the defamatory nature of the communication. [citing *Scottsdale Capital Advisors Corp. v. The Deal, LLC,* 887 F.3d 17, 22 (distinguishing *Keeton, supra,*, 465 U.S. at 777)]."

Decisions of other state courts hold that personal jurisdiction that satisfies Due Process arises from defamatory statements made available to residents of the forum state, whether explicitly targeting the forum state or not. For example, in the case of *Internet Solutions Corp. v. Tabatha Marshall*, No. SC09-272, 39 So.3d 1201, 2010 WL 2400390, No SC09-272 (Sup. Ct. FL, June 17, 2010), the Florida Supreme Court that its long-arm statute is satisfied for Due Process minimum

contacts purposes, when allegedly defamatory material about a Florida resident is placed on the Web and accessed or "published" in Florida. The *Internet Solutions* court rejected the idea that sending "electronic communications into Florida" requires that a poster of online material must target specific Florida residents. Rather, the court reasoned that someone tortuously posting material online directs the communication to potential readers within Florida because the poster makes the information available everywhere, including in Florida:

> "A nonresident defendant commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida." *Internet Solutions, supra,* 39 So.3d at 1216.

Similarly, in *Bochan v. La Fontaine*, 68 F.Supp.2d 692, 699-703 (ED VA 1999), personal jurisdiction was upheld in a defamation action based on a nonresident defendant's posting on an "Internet news group", in large part due to the bulletin board like interactive nature of the internet service provider's website.

Additionally, courts across the country recognize that personal jurisdiction applies when nonresidents defame others online whenever they knowingly publish their statements to audiences in those states and cause injury in those states. *Baronowsky v. Maiorano*, 326 So.3d 85 (Fl. App. 2021); *Majumdar v. Fair*, 567 F.Supp.3d 901 (N.D. Ill. 2021); *TV Azteca, S.A.B. de CV v. Ruiz*, 490 S.W.3d 29 (Tex. 2016);*Vangheluwe v. Got News, LLC*, 365 F.Supp.3d 850 (E.D. Mich. 2019);

*Groo v. Montana Eleventh Judicial District Court*, 537 P.3d 111 (Mont. 2023);

*Capps v. Bullion Exchange*, 2018 WL 3966268 (N.D. Ok 2018); *Dongxiao Yue v.*
*Wenbin Yang*, 62 Cal.App.5th 539 (Cal. App. 2021); *Zidon v. Pickrell*, 344

F.Supp.2d 624 (D. N. Dak. 2004);  *Hongjin Sui v. Wu*, 2011 WL 1396994 (M.D.

Fla. 2011);  *Hawbecker v. Hall*, 88 F.Supp.3d 723 (W.D. Tex. 2015); *Strabala v.*
*Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016); *Kauffman Racing Equip., L.L.C. v. Roberts*,

930 N.E.2d 784 (Ohio 2010); *Price v. Kronenberger*, 24 So.3d 775 (Fl. App.

2009); *Wesley v. National Hemophilia Foundation*, 148 N.E.3d 221 (Il. App.

2020); *Saxon v. Smith*, 479 S.E.2d 788 (N.C. App. 1997).

## IV.   <u>ARGUMENT</u>

### A.    AN EVIDENTIARY HEARING PENDING JURISDICTIONAL DISCOVERY SHOULD BE ORDERED

Since motions to dismiss are made at the outset of the case, in evaluating

whether the plaintiff has met its initial burden, personal jurisdiction motions are

normally decided on the basis of declarations and discovery materials.

Accordingly, Circuit Courts have reversed District Courts that have neglected to

afford the plaintiff a full-blown evidentiary hearing following jurisdictional

discovery, in cases where personal jurisdiction is challenged at the pleadings stage

of the case:

> "[T]he district court's error was, having chosen 'not to conduct a full-
> blown evidentiary hearing,' …, in resolving the parties' dispute over
> the authenticity of [the plaintiff]'s evidence rather than evaluating,

whether [the plaintiff] had, through its pleadings and affidavits, made a *prima facie* showing of personal jurisdiction 'notwithstanding any controverting presentation by' [the defendant]." *Dorchester, supra,* (2nd Cir. 2013) 722 F3d at 86.

The reason that evidentiary hearings pending a reasonable opportunity for jurisdictional fact discovery is the vastly preferred course, is self-evident. A given plaintiff cannot be expected to prove all jurisdictional facts that relate to the defendant(s) at the pleadings stage until the plaintiff is afforded a full and fair opportunity to muster the evidence to support such facts. This is particularly so where the facts such as the defendant's business dealings, political interactions, social networking and residential history are inherently and exclusively within the knowledge of the defendant. If it were otherwise, defendants could prevent plaintiffs from meeting their jurisdictional burden simply by filing Rule 12(b)(2) motions contradicting whatever was in the plaintiffs' pleadings. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.* (9th Cir. 1977) 557 F2d 1280, 1285 ("*Data Disc*"); *Walk Haydel & Assocs., Inc. v. Coastal Power Production Co.* (5th Cir. 2008) 517 F3d 235, 241.[16]

---

[16] Although Defendant's Motion to Dismiss is brought under FRCP Rule 12(b)(2), related provisions of Rule 12 are instructive here. Namely, under Rule 12(b)(6) and 12(c), where matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. As discussed herein, Defendant's Motion To Dismiss challenges personal jurisdiction based on matters outside Mr. Kennedy's pleadings.

Moreover, case law holds that if the facts alleged in the pleadings are contested, a full evidentiary hearing **must** be afforded at some point. *See DeMelo v. Toche Marine, Inc.* (5th Cir. 1983) 711 F2d 1260, 1271, fn. 12. Alternatively, the court may defer a decision on the motion to the trial on the merits. *Data Disc, supra*, 557 F2d at 1285. In such cases, "it is ***preferable*** that this determination be made at trial where a plaintiff may present his case in a coherent, orderly fashion, and without the risk of prejudicing his case on the merits." (emphasis added) *Data Disc, supra,* 557 F2d at 1285-1286, fn. 2.

Here, the jurisdictional facts alleged in Mr. Kennedy's Complaint are contested by Mr. Vickrey to an extent that requires an evidentiary hearing to determine personal jurisdiction. Namely, the jurisdictional allegations contested in Defendant's Motion To Dismiss include, but are not limited to:

- "Defendant … published the statements complained of herein in New Hampshire, to a New Hampshire audience, to do damage to Mr. Kennedy in New Hampshire." Complaint, ¶7; *compare* Defendant's Motion to Dismiss, pg 6 ["The only allegation of a connection between Plaintiff's claim and Mr. Vickrey's alleged contacts with New Hampshire is Plaintiff's claim that Mr. Vickrey published the blog post in New Hampshire, which is untrue."];

- As of 2020, Mr. Kennedy has focused his campaign on New Hampshire, because New Hampshire is commonly one of the first, if not the first, state to hold presidential primaries. *Supra,* pp. 6-7 above; *compare* Defendant's Motion to Dismiss, pg 9 ["[I]t is clear that neither Plaintiff nor the blog post has even the most remote of connections with New Hampshire."];

- Indeed, the *Daily Kos* has and continues to be instrumental in influencing New Hampshire voters in political election campaigns to this day. *Supra,* pp. 4-5 above; *compare* Defendant's Motion to Dismiss, pg 10 ["Mr. Vickrey's

position [is that] Plaintiff has suffered no appreciable harm in New Hampshire."];

- The Defamatory Article published by Mr. Vickrey was specifically targeted to voting residents of New Hampshire, in order to derail Mr. Kennedy's 2024 Presidential campaign, even spawning the launch of current President Biden's write-in campaign for the State of New Hampshire Democratic primary election. *Supra,* pp. 6-7 above; *compare* Defendant's Motion to Dismiss, pg 11 ["The only conceivable basis for finding that Mr. Vickrey intended to harm Plaintiff in New Hampshire is the availability of the blog post to residents of New Hampshire."]; and

- The *Daily Kos* website is, by its own description, an interactive web site and message board for political activists focusing on "influenc[ing][] the electoral process" and "[p]utting public pressure on" politicians in the United States. *Supra,* at pp. 3-4; *compare* Defendant's Motion to Dismiss, pg 13 ["The section of *Daily Kos* in which Mr. Vickrey's blog post appears is a classic 'passive' website … insofar as it 'does little more than make information available to those who are interested in it.'."].

As such, Mr. Kennedy's Complaint, considered along with the jurisdictional facts set forth in Defendant's Motion to Dismiss and this Objection respectively, reveal that essential facts required to decide personal jurisdiction are disputed by the parties. Accordingly, a reasonable opportunity to conduct jurisdictional discovery would reveal and resolve key jurisdictional facts including but not limited to:

1. The extent to which Mr. Vickrey solicited customers in New Hampshire, provided services in New Hampshire, and conducts ongoing business in New Hampshire when he published and circulated the Defamatory Article, given his eight years as vice president of SkillSoft, a company headquartered in Nashua, New Hampshire (*see supra,* at pp. 5-6 above);

2. Whether and to what extent Mr. Vickrey targeted New Hampshire residents when he published the Defamatory Article (*see supra,* at pp. 5-7 above);

3. Whether and to what extent Mr. Vickrey engaged in a defamatory smear campaign against Mr. Kennedy when the Defamatory Article was published, and after it was published, to impact Kennedy's reputation in New Hampshire (*ibid.*);

4. The extent to which Mr. Vickrey's statements about Mr. Kennedy on the *Daily Kos* website were specifically disseminated amongst New Hampshire residents (*see supra,* at pp. 4-5 above); and

5. Whether and to what extent Mr. Vickrey made these defamatory statements against Mr. Kennedy through other Web or electronic mediums that were directed at New Hampshire residents.

Accordingly, ordering an evidentiary hearing pending a reasonable opportunity for Mr. Kennedy to conduct jurisdictional discovery is the most just and fair outcome. It is also consistent with the relevant precedent discussed above.

**B.    ALTERNATIVELY, THIS COURT SHOULD DENY DEFENDANT'S MOTION ON THE MERITS OUTRIGHT**

When a defendant's motion to dismiss is made as its initial response and the court decides the motion without conducting an evidentiary hearing, the plaintiff's jurisdictional burden is fundamentally lower, requiring only to make a prima facie showing that personal jurisdiction exists. That standard was affirmed by the First Circuit in *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* (1st Cir. 1995) 46 F.3d 138, 145 ("*Foster-Miller*"):

"[T]he district court acts not as factfinder, but as a data collector, That is to say, the court, in a manner reminiscent of its role when a motion for summary judgment is on the table, … must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of deterring the adequacy of the prima facie jurisdictional showing."; *see*

17

*also U.S. v. Swiss Am. Bank, Ltd.,* (1st Cir. 2001) 274 F.3d 610, 618 [when no hearing has been held, the court proceeds under the prima facie standard].

Other Circuit Courts hold to the same, deferential prima facie standard as set forth in *Foster-Miller. See Martinez v. Aero Caribbean* (9th Cir. 2014) 764 F3d 1062, 1066; *Air Products & Controls, Inc. v. Safetech Int'l, Inc.* (6th Cir. 2007) 503 F3d 544, 549; *Herman v. Cataphora, Inc.* (5th Cir. 2013) 730 F3d 460, 463. In this context, a "prima facie" showing means that plaintiff has produced admissible evidence sufficient to establish the existence of personal jurisdiction. See *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.* (9th Cir. 2003) 328 F3d 1122, 1129; *WNS, Inc. v. Farrow*, (5th Cir. 1989) 884 F2d 200, 203-204.

Moreover, until an evidentiary hearing or trial on the merits is held: (a) the complaint's uncontroverted factual allegations must be accepted as true; (b) the court will draw "reasonable inferences" from the complaint in favor of plaintiff; and (c) any factual conflicts in the parties' declarations must be resolved in plaintiff's favor. *Nandjou v. Marriott Int'l, Inc.,* 985 F.3d 135, 147 (1st Cir. 2021). *See also Dorchester, supra,* 722 F3d at 86 [reversible error to resolve factual disputes in defendant's favor before evidentiary hearing].

There are two basic grounds for finding in personam jurisdiction that is consistent with Due Process: specific and general. Here, both are applicable to Mr. Vickrey. As set forth in Defendant's Motion To Dismiss: "'A court may exercise

general jurisdiction over a defendant even when the cause of action is not related to the defendant's forum-based conduct, provided that the defendant has engaged in the continuous and systematic pursuit of general business activities in the forum state." Defendant's Motion To Dismiss, pg 16 (citing *Dagesse, supra,* 113 F.Supp.2d at 218). Here Mr. Vickrey worked for nearly a decade in New Hampshire, and appears to continually provide services in New Hampshire, solicits business in New Hampshire, and has long-established ties to New Hampshire. *See supra,* at p. 5-6 above. Mr. Vickrey's self-serving declaration is the only indicia that general jurisdiction over him is unreasonable. That is simply not enough in light of the lower prima facie standard to be afforded the plaintiff in the absence of an evidentiary hearing.[17]

Specific jurisdiction is also fully warranted here. Mr. Vickrey deliberately chose to republish his false statements about Mr. Kennedy after his announcement of his New Hampshire primary campaign, seeking to cause reputational harm to Mr. Kennedy in New Hampshire. *See supra,* at pp. 4-7. Courts find that under such circumstances specific in personam jurisdiction is warranted. For example, in *Brother Records, Inc. v. Harpercollins Publishers*, 141 N.H. 322, 325-328 (1996)

---

[17] Again, to the extent this Court deems whether the aforementioned factual allegations are contested, deferring ruling on Defendant's Motion To Dismiss pending an evidentiary hearing after jurisdictional fact discovery is the proper outcome. *See supra,* at pp. 13-17 above.

("*Brother Records*"), the Supreme Court of New Hampshire found that sufficient minimum contacts warranting in personam jurisdiction in a libel action existed where the defendants who were authors of a musical group member's autobiography, and a partnership that hired one of the authors to prepare the manuscript and contracted with the publisher, because those defendants were directly responsible for the content of the book, their ultimate goals regarding the book included nationwide distribution and sale, and the market for the book included (but was certainly not limited to) New Hampshire. *See also Moore v. Cecil*, 488 F.Supp.3d 1144, 1159 (N.D. Ala. 2020) [holding that press release statements made out of state provided personal jurisdiction over a defendant when the statement was intended to impact an election in the forum state].

As discussed more fully above, Mr. Kennedy's Complaint, combined with the judicially noticeable evidence set forth in the jurisdictional facts section above, adequately establish a prima facie case of specific in personam jurisdiction: Mr. Vickrey published his false statements in New Hampshire, directed them at New Hampshire residents, and intended to cause reputational harm to Mr. Kennedy in New Hampshire. *See supra,* at pp. 3-7.

Specifically, the relatedness and purposeful availment prongs of Due Process are satisfied here, because it is undisputable that Mr. Vickrey used an interactive blog website, inviting interaction and continuous commentary, intended

to inspire activism, on the interactive website *Daily Kos*. *See supra,* at pp. 3-5. As such, courts consistently hold that publishers on interactive sites targeting a forum audience can be held liable in the forum state for harm caused in that state. Interactive sites invite and solicit users to actively engage in online discussion, generating a fundamentally broader basis for imposing personal jurisdiction over defendants making libelous statements over such websites. It is noteworthy here that Mr. Vickrey specifically chose an interactive website, inviting commentary and reaction, and intending to induce a response. Moreover, *Daily Kos* is precisely the kind of website forum that routinely publishes in New Hampshire to target New Hampshire residents (*see supra,* at pp. 4-5), that the courts find personal jurisdiction over publishers of libelous statements warranted. As such, Mr. Vickrey's blog was not a mere passive post on a passive website awaiting random discovery, as Defendant's Motion To Dismiss falsely contends. Rather, Mr Vickrey openly chose to publish his libelous post on precisely the kind of interactive website the First Circuit previously found sufficient for in personam jurisdiction. *See, e.g.*, *McBee v. Delica Co., Ltd.,* 417 F.3d 107, 124 (1st Cir. 2005).

Finally, the reasonableness prong of Due Process for purposes of evaluating whether personal jurisdiction should be found, exists here as well. The arguments made in Defendant's Motion To Dismiss otherwise, such as the purported inconvenience for Mr. Vickrey to litigate the dispute in New Hampshire, are

trumped by the jurisdictional facts set forth herein (e.g. that Mr. Vickrey has long standing business contacts in New Hampshire). *See supra,* at pp. 5-6 above. *see also C.W. Downer & Co. v. Bioriginal Food & Science Corp.,* 771 F.3d 59, 70 (1st Cir. 2014) [since all defendants are inconvenienced to some extent by litigating outside their home state, a defendant must demonstrate "that an exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way"]; *Brother Records, supra,* 141 N.H. at 328-329 [exercising personal jurisdiction in New Hampshire over nonresident authors of musical group member's autobiography and partnership did not offend traditional notions of fair play and substantial justice in libel action, though parties had no apparent connections to New Hampshire; defendants had direct hand in writing and publication of nationally distributed book and could have expected injury to occur in New Hampshire]. Additionally, Mr. Kennedy as well as the state of New Hampshire, have strong interests in adjudicating the instant dispute in New Hampshire. Among other reasons because Mr. Vickrey targeted New Hampshire to derail Mr. Kennedy's Presidential campaign in that very state, prompting a write-in campaign by the incumbent and active solicitation of fundraising efforts against Mr. Kennedy from the *Daily Kos* organization. *See supra,* at pp. 6-7 above.

 In sum, the jurisdictional facts set forth and discussed above are more than enough to deny Defendant's Motion To  Dismiss outright, in light of the proper

standard of determining whether Mr. Kennedy has made a prima facie showing

with reasonable inferences and factual conflicts to be resolved in the plaintiff's

favor - absent an evidentiary hearing. *Foster-Miller, supra,* 46 F.3d at 145; *see*

*supra,* at pp. 3-7 above. Accordingly, if an evidentiary hearing after jurisdictional

fact discovery is not ordered by this Court, denial of Defendant's Motion To

Dismiss should be ordered instead.

## C.    ALTERNATIVELY, LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED

The federal rules provide that leave to amend a pleading is to be freely

granted: "[A] party may amend its pleadings only with the opposing party's written

consent or the court's leave. The court should freely give leave when justice so

requires." FRCP, Rule 15(a)(2). Circuit Courts have routinely reversed district

court dismissal that didn't grant the plaintiff at least one opportunity to amend the

pleadings to avoid dismissal. *National Council of La Raza v. Chegavske* (800 F3d

1032, 1041 (9th Cir. 2015) ["black-letter law" that district court must give at least

one chance to amend absent clear showing amendment would be futile]; *Davoodi*

*v. Austin Independent School Dist.* 755 F3d 307, 310 (5th Cir. 2014) [dismissal

after giving plaintiff only one chance to state case "is ordinarily unjustified"].

Moreover, dismissals without leave to amend are subject to "strict scrutiny" on

appeal, unless the record clearly establishes the reason why leave to amend was

denied. *Mayes v. Leipziger* 729 F2d 605, 608 (9th Cir. 1984).

As discussed above, Plaintiff submits that the most appropriate course is for this Court to order an evidentiary hearing pending jurisdictional fact discovery. Alternatively, Mr. Kennedy submits that the jurisdictional allegations in the Complaint are sufficient to merit denial of Defendant's Motion To Dismiss on the merits outright. If this Court elects not to order either of those outcomes, Mr. Kennedy requests that he be permitted leave to amend the Complaint to cure any jurisdictional deficiencies this Court may determine exist.

## V.   <u>CONCLUSION</u>

For the reasons discussed above, this Court should defer ruling on Defendant's Motion To Dismiss and order an evidentiary hearing pending reasonable jurisdictional discovery. Alternatively, this Court should deny Defendant's motion on the merits. Alternatively, this Court should grant Plaintiff leave to amend regarding the jurisdictional matters alleged in his pleadings.

DATED: November 29, 2023      Respectfully submitted,
Robert F. Kennedy, Jr.

/s/ Robert E. Barnes
Robert E. Barnes, Esq. (*pro hac vice*)
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, CA 90017
(310) 510-6211 (tel)
robertbarnes@barneslawllp.com

/s/ Jason M. Sullivan
Jason M. Sullivan
Law Office of Jason M. Sullivan, PLLC
One New Hampshire Avenue
Suite 125
Portsmouth, NH 03801
(603) 433-1325 (tel)
(603) 436-7388 (fax)
jsullivan@lojms.com
NH Bar No: 14360

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, ROBERT E. BARNES, am a citizen of the United States and am at least 18 years of age.  My business address is 700 South Flower Street, Suite 1000, Los Angeles, California 90017.

I am not a party to the above titled action.  I have caused service of this document(s) filed through the ECF system sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on the date set forth below:

Brian Andrew Suslak
Morrison Mahoney LLP
650 Elm St, Ste 201
Manchester, NH 03101
603-622-3400
Email: bsuslak@morrisonmahoney.com

Jason M. Sullivan
Law Office of Jason M. Sullivan, PLLC
One New Hampshire Avenue
Suite 125
Portsmouth, NH 03801
(603) 433-1325 (tel)
(603) 436-7388 (fax)
jsullivan@lojms.com


     I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 29, 2023.

                                 /s/ Robert E. Barnes
                                 ROBERT E. BARNES