UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

---

ROBERT F. KENNEDY, JR.,

        Plaintiff,

v.                                          Docket No. 1:23-cv-00487

DAVID VICKREY,

        Defendant.

---

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**OPPOSITION TO MOTION TO DISMISS**

Pursuant to L.R. 7.1(e)(1), Defendant, David Vickrey, by and through his attorneys, Morrison Mahoney LLP, submits the following Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, dated November 29, 2023.

## I.    FACTUAL REBUTTALS

### A.    Plaintiff Has Improperly Attributed to Mr. Vickrey Alleged Contacts Between New Hampshire and *Daily Kos*

Plaintiff spends a considerable portion of his Opposition discussing alleged contacts between *Daily Kos* and New Hampshire, none of which have any bearing on the lack of contacts between **Mr. Vickrey** and New Hampshire. At the outset, Plaintiff refers to *Daily Kos* as "Defendant's interactive blog site," but Mr. Vickrey has no ownership or other financial interest in the website. (Supplemental Declaration of David Vickrey, Ex. A, at ¶¶ 4-5). Mr. Vickrey has never been paid for any content that he has posted on the site since 2003. (Ex. A, at ¶ 6). Mr. Vickrey has zero editorial control concerning the content published on *Daily Kos*, beyond the content that he writes himself. (Ex. A, at ¶ 7).

Plaintiff also alleges that *Daily Kos* has engaged in political activism within New Hampshire, and allegedly assisted a New Hampshire resident's election to the state legislature. Plaintiff further alleges that other *Daily Kos* contributors have posted blogs or articles on *Daily Kos* concerning the 2024 Presidential Election and the New Hampshire presidential primary. These purported facts in no way concern the alleged defamatory statement published by Mr. Vickrey, nor do they show any connection between Mr. Vickrey and the State of New Hampshire. Plaintiff has not sued *Daily Kos* in this lawsuit, he has only sued Mr. Vickrey.  Mr. Vickrey has not been involved in any campaigns organized or funded by *Daily Kos* in the State of New Hampshire.  (Ex. A, at ¶ 8).  Accordingly, the Court should disregard Plaintiff's arguments concerning the alleged contacts between *Daily Kos* and New Hampshire in ruling on Mr. Vickrey's Motion to Dismiss.

**B.    Plaintiff's Alleged "Jurisdictional Facts" Concerning Mr. Vickrey's Work History**

Plaintiff also has advanced, without support via affidavit or declaration, additional purported "facts" concerning Mr. Vickrey's work history and alleged business connections with New Hampshire.  The unsupported "facts" set forth by Plaintiff are false and should be rejected by the Court.

Plaintiff once again alleges that Mr. Vickrey's former employment with SkillSoft, a global company that has an office in Nashua, New Hampshire, subjects Mr. Vickrey to personal jurisdiction in New Hampshire for a blog post that he wrote from his home in Maine, which in no way concerned New Hampshire or Plaintiff's future presidential run, **12 years after Mr. Vickrey left the employ of SkillSoft**.  (Ex. A, at ¶ 9).  Plaintiff alleges that SkillSoft was "headquartered" in Nashua during the time that Mr. Vickrey worked for the company.  In fact, SkillSoft was headquartered in Dublin, Ireland during the time that Mr. Vickrey worked for the company.  (Ex.

A, at ¶ 10).  In 2008, Mr. Vickrey ended his employment with SkillSoft.  (Ex. A, at ¶ 12).  While Mr. Vickrey occasionally transacted business with residents of New Hampshire in the early-mid 2000s while employed with SkillSoft, he has not done any business with any residents of New Hampshire nor solicited business from any residents of New Hampshire for over ten years.  (Ex. A, at ¶¶ 11, 13-14).  Thus, Mr. Vickrey's former employment with SkillSoft does not subject him to personal jurisdiction in New Hampshire.

Plaintiff next alleges that Mr. Vickrey's current employment with Seabridge Advisors, LLC subjects Mr. Vickrey to personal jurisdiction in the State of New Hampshire.  Mr. Vickrey founded Seabridge Advisors in 2016 and operates the business from his home in Maine.  (Ex. A, at ¶¶ 15-16).  He currently holds the title of Managing Principal.  (Ex. A, at ¶ 17).  In his role as Managing Principal of Seabridge Advisors, Mr. Vickrey has conducted no business in the State of New Hampshire nor with residents of the State of New Hampshire.  (Ex. A, at ¶¶ 18-19).  Under FINRA regulations and in his role as Managing Principal, Mr. Vickrey must be licensed in every state in which he conducts business.  (Ex. A, at ¶ 20).  As of the date of this Reply, Mr. Vickrey is licensed in Maine, Pennsylvania, California, New Jersey, Oregon, and Georgia.  (Ex. A, at ¶ 21).  Mr. Vickrey is not licensed to conduct business in New Hampshire.  (Ex. A, at ¶ 22).  Accordingly, Mr. Vickrey's employment with Seabridge Advisors does not subject him to personal jurisdiction in the State of New Hampshire.

### C.    Plaintiff's Timeline Is Inconsistent with the History of Plaintiff's Presidential Campaign and Mr. Vickrey's Allegedly Defamatory Blog Post

Plaintiff argues that Mr. Vickrey published his alleged defamatory blog post in 2020 to derail Plaintiff's presidential campaign, with a focus on New Hampshire given its first in the nation presidential primary.  This alleged timeline of events, which Plaintiff argues provides a factual basis for exercising personal jurisdiction over Mr. Vickrey in New Hampshire, fails to make it out

of the starting gate. This is because Plaintiff did not announce—and Mr. Vickrey did not become aware of—his presidential campaign until 2023, nearly three years after Mr. Vickrey published the alleged defamatory blog post. (Ex. A, at ¶ 23) Accordingly, it would have been impossible for Mr. Vickrey in August 2020 to "specifically target" New Hampshire voters in an effort to derail the presidential campaign that Plaintiff would not announce for another three years.

Plaintiff further alleges that Mr. Vickrey "chose to elevate and escalate" his defamation campaign against Plaintiff after Plaintiff announced his campaign for the presidency "focused on New Hampshire." This is also false. Mr. Vickrey made no comments concerning Mr. Kennedy for nearly three years following the 2020 blog post. (Ex. A, at ¶ 24) In May 2023, Mr. Vickrey received a letter from Plaintiff and his *pro hac* counsel in the instant lawsuit, threatening to file a lawsuit against Mr. Vickrey in New York federal court.[1] (Ex. A, at ¶ 25) When Mr. Vickrey received this letter from counsel for Plaintiff, he wrote an article about it. (Ex. A, at ¶ 26) The article solely concerned Plaintiff's threatened lawsuit against Mr. Vickrey in New York. (Ex. A, at ¶ 27) The article did not discuss New Hampshire, nor Plaintiff's presidential campaign. (Ex. A, at ¶¶ 28-29) In August 2023, Mr. Vickrey posted another article concerning a settlement demand received from counsel for Plaintiff. (Ex. A, at ¶ 30) This article also did not discuss New Hampshire nor Plaintiff's alleged focus on New Hampshire in his presidential campaign. (Ex. A, at ¶¶ 31-32) The only time that Mr. Vickrey has ever referenced Plaintiff and New Hampshire in the same article was in a September 2023 article, where Mr. Vickrey discussed Plaintiff's filing of the instant lawsuit in New Hampshire state court and Mr. Vickrey's opinion that Plaintiff had done so to take advantage of the state's statute of limitations for defamation claims. (Ex. A, at ¶¶ 33-34) This article did not reference Plaintiff's presidential campaign, nor his alleged focus on the

---

[1] Mr. Vickrey has included a copy of this letter from Attorney Barnes as an attachment to his Declaration filed with his Motion to Dismiss.

New Hampshire primary.  (Ex. A, at ¶ 35).  Accordingly, Plaintiff's argument that Mr. Vickrey "elevated and escalated" his alleged defamation campaign against Plaintiff in New Hampshire following Plaintiff's announcement of his presidential campaign is completely without merit and does not subject Mr. Vickrey to personal jurisdiction in this court.

## II.  LEGAL REBUTTALS

### A.  Plaintiff Has Failed to Properly Rebut Mr. Vickrey's Factual Allegations Concerning the Lack of Personal Jurisdiction Over Mr. Vickrey In New Hampshire

The Court should grant Mr. Vickrey's Motion to Dismiss because the additional jurisdictional facts submitted by Plaintiff in his Opposition are unsupported by affidavit or declaration.   In his Opposition, Plaintiff occasionally attributes some of his purported "jurisdictional facts" to websites including Wikipedia and the Huffington Post.[2]  However, the majority of Plaintiff's purported facts have no support whatsoever.  None of Plaintiff's alleged jurisdictional facts, either in his Complaint or in his Opposition, are supported by affidavit or declaration.  By comparison, Mr. Vickrey, in his Motion to Dismiss, provided a sworn Declaration in support of each and every factual averment set forth by Mr. Vickrey in support of his argument that this Court lacks personal jurisdiction over this lawsuit.  Mr. Vickrey also has provided a Supplemental Declaration with this Reply, controverting Plaintiff's alleged jurisdictional facts advanced in the Opposition.

---

[2] Plaintiff has requested that the Court take judicial notice of the various website hyperlinks included in Plaintiff's Opposition.  "A high degree of indisputability is the essential prerequisite to taking judicial notice of any fact."  Barnstable County v. 3M Company, 2017 WL 6452245, at *3 (D. Mass. 2017) (internal citations omitted).  In Barnstable County, the U.S. District Court for the District of Massachusetts refused to take judicial notice of a screenshot of a PowerPoint slide uploaded to the county's YouTube page on the grounds that the court could not "see how this document bears the same level of reliability and accuracy as the other public documents judicially noticed in this case."  Id. at *6.  This is consistent with the decisions of other courts within the First Circuit.  See Rivera v. Marriott International, Inc., 456 F.Supp.3d 330, 337 (D.P.R. 2020) (refusing to take judicial notice of unauthenticated printouts of websites).  Mr. Vickrey submits that the reasoning of these courts applies to Plaintiff's request in the instant case and compels the Court to deny Plaintiff's request for judicial notice of the website hyperlinks included in his Opposition.

The First Circuit has held that when a plaintiff fails to rebut the affidavits of a defendant moving to dismiss a lawsuit due to lack of personal jurisdiction, the plaintiff cannot satisfy his/her burden of proof and dismissal for lack of personal jurisdiction is warranted.  See Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 901, 906 (1st Cir. 2007) ("[E]ach of the seven named defendants filed affidavits stating that they had never transacted personal business in Puerto Rico, and appellant failed to sustain his burden of rebutting them.")  Other jurisdictions across the United States have reached similar decisions.  See Uston v. Hilton Casinos, Inc., 564 F.2d 1218 (9th Cir. 1977) ("Uston failed adequately to rebut the facts contained in Hilton Casinos' affidavit denying the allegations upon which Uston relied to establish in personam jurisdiction under the California long-arm statute.  Therefore, dismissal by the district court was proper"); Shujauddin v. Berger Building Products, Inc., 2019 WL 9102043, at *1, n. 2 (noting that "[w]hen a defendant challenges personal jurisdiction, the plaintiff has the burden of proof to establish 'jurisdictional facts through sworn affidavits or other competent evidence"); Pyure Brands, LLC v. Nascent Health Science LLC, 2019 WL 7945231, at *4 (S.D. Fla. 2019) ("the failure to rebut, with some admissible evidence, the statements in the . . . Defendants' affidavits . . . fatally undermines the Plaintiffs' case for personal jurisdiction") (internal quotations and citations omitted).

In opposing Mr. Vickrey's Motion to Dismiss, Plaintiff has done nothing more than rehash the bare bones pleadings concerning Mr. Vickrey's alleged contacts with New Hampshire outlined in the Complaint and direct the Court to a few websites.  This is precisely the type of response to a motion to dismiss that the above-referenced authorities have ruled cannot overcome a motion to dismiss supported by a sworn declaration or affidavit.  Because Plaintiff has failed to properly rebut the facts contesting personal jurisdiction in Mr. Vickrey's declaration, Plaintiff cannot satisfy his burden of proof and dismissal is warranted at this time.

**B.** **The Cases Relied on by Plaintiff are Distinguishable from the Facts of the Instant Case**

Mr. Vickrey has already discussed in detail the application of <u>Keeton</u> and <u>Calder</u> in his Motion to Dismiss and will not repeat those arguments here.  Mr. Vickrey takes this time briefly to respond to the other legal authority relied upon by Plaintiff in his Opposition and to explain why said authority is easily distinguishable from the facts of this case.  Mr. Vickrey first notes that most of the cases cited by Plaintiff do not concern defamation in the context of an online post/article.  Accordingly, Mr. Vickrey submits that these cases are of little value in the Court's analysis of the jurisdictional issue presented by Mr. Vickrey.

Two of the cases cited by Plaintiff that concern online defamation, <u>Helali v. Legarde</u>, 2022 WL 110685 (D. Vt. 2022) and <u>deLaire v. Voris</u>, 2021 WL 1227087 (D.N.H. 2021) easily are distinguishable from the facts of this case.  In <u>Helali</u>, the United States District Court for the District of Vermont held that personal jurisdiction over a defendant was appropriate when the defendant had engaged in an alleged defamation campaign against a former romantic partner. <u>Helali</u>, 2022 WL 110685, at *5-8.  If the Court simply were to review Plaintiff's Opposition for its understanding of the Vermont District Court's decision in <u>Helali</u>, it would be left with the understanding that the court in <u>Helali</u> exercised personal jurisdiction over an out-of-state defamation defendant who did nothing more than post allegedly defamatory remarks on the internet.  Review of the <u>Helali</u> decision, however, shows that the defendant in that case also directly contacted multiple residents of Vermont by both telephone and letter to spread defamatory statements concerning the plaintiff.  <u>Id.</u> at *6.  In fact, the <u>Helali</u> court expressly stated that "[t]he allegedly defamatory statements Ms. Legarde made included not just online posts, but defamatory statements in calls and emails to six people whom Ms. Legard allegedly knew were Vermont residents and who were associated with Plaintiff through Vermont-based organizations."  <u>Id.</u>

7

Plaintiff has not alleged that Mr. Vickrey engaged in the direct contact of in-state residents carried out by the defendant in Helali.  Accordingly, Plaintiff's reliance on Helali is misplaced.

For the same reasons, Plaintiff improperly relies on this Court's decision in deLaire.  In deLaire, the defendants allegedly defamed a Catholic priest who resided in New Hampshire.  deLaire 2021 WL 1227087, at *1.  As part of the alleged misconduct, the defendants traveled to New Hampshire to interview residents of New Hampshire and record a video, which the plaintiff alleged contained defamatory statements concerning the plaintiff.  Id.  The defendants also solicited donations from approximately 288 donors who lived in New Hampshire.  Id. at *2.  In rejecting the defendants' personal jurisdiction argument, this Court noted that the defendants targeted the plaintiff, who resided in New Hampshire and was the pastor of a parish in New Hampshire.  Id. at *5.  This Court further noted that the allegedly defamatory statements concerned the plaintiff's duties as a priest within the State of New Hampshire and, on those grounds, could be construed to have been intended to harm the plaintiff in New Hampshire.  Id.  Accordingly, this Court found that "the focal point of the allegedly defamatory communications was in New Hampshire, and the harm was felt in New Hampshire."  Id.

Mr. Vickrey welcomes the Court's consideration of Helali and deLaire, as the defendants' conduct in those cases is in sharp contrast with what occurred here.  As discussed more fully in Mr. Vickrey's Motion to Dismiss, Mr. Vickrey's blog post did nothing more than link to a German article concerning Plaintiff's appearance at an event in Germany.  Unlike the defendant in Helali, Mr. Vickrey did not speak with or consult anyone located in New Hampshire as part of preparing his blog post.  Unlike the defendant in deLaire, Mr. Vickrey never traveled to New Hampshire for any reason associated with his blog post.  Mr. Vickrey published a blog from his home in Maine that did not reference New Hampshire in any way.  He did not take any of the affirmative steps

8

undertaken by the defendants in <u>Helali</u> and <u>deLaire</u> when they allegedly defamed the plaintiffs in their respective lawsuits.  Accordingly, these cases confirm that jurisdiction is lacking here.

## III.    PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY

### A.    Plaintiff's Request for Jurisdictional Discovery Fails to Comply with L.R. 7.1(a)(1)

Plaintiff's request for jurisdictional discovery should be denied because it fails to comply with Local Rule 7.1(a)(1), which provides that "[o]bjections to pending motions and affirmative motions for relief shall not be combined into one filing."  This Court has previously denied a plaintiff's motion for jurisdictional discovery on these exact grounds.  <u>See</u> <u>Realtrust IRA Alternatives, LLC v. Entrust Group</u>, 2011 WL 1033705, at *1 (D.N.H. 2011).  In <u>Realtrust</u>, then-Magistrate Judge McCafferty denied a plaintiff's motion for jurisdictional discovery that combined an argument on the merits with a request for jurisdictional discovery.  <u>Id.</u>  In denying the plaintiff's motion, Judge McCafferty noted that if the plaintiff "had harbored a genuine concern about its ability to object to [the defendant's] motion without additional information, it could have—and should have—filed a motion for discovery rather than a lengthy argument on the merits with a request for discovery tacked on at the end."  <u>Id.</u>

Plaintiff's motion in the instant case is analogous to the motion at issue in <u>Realtrust</u>.  It essentially argues that Plaintiff has already met his burden of establishing personal jurisdiction over Mr. Vickrey; but, if the Court disagrees, Plaintiff should be entitled to jurisdictional discovery.  If Plaintiff believes that he has already established personal jurisdiction over Mr. Vickrey, then he is not entitled to jurisdictional discovery.  Rather, he should rest on the arguments already made in his Opposition concerning the merits of Mr. Vickrey's Motion to Dismiss.  Arguing both sides of this issue runs afoul of the requirements of Local Rule 7.1(a)(1).  Therefore, Plaintiff's request for jurisdictional discovery must be denied.

**B.** **Plaintiff Has Failed to Make out a Colorable Case for the Existence of Personal Jurisdiction over Mr. Vickrey**

Plaintiff's request for jurisdictional discovery should be denied because Plaintiff has failed to advance a "colorable" case of the existence of personal jurisdiction over Mr. Vickrey in New Hampshire for all of the reasons set forth in Mr. Vickrey's Motion to Dismiss, which is incorporated herein by reference.  "The 'colorable' . . . standard for obtaining jurisdictional discovery requires some showing that discovery is needed or likely to be useful." U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 636 (1st Cir. 2001).  Here, Plaintiff has failed to show any need for jurisdictional discovery, or how said discovery is likely to be useful.  Other jurisdictions have refused to allow plaintiffs to pursue jurisdictional discovery when the plaintiffs fail to set forth adequate jurisdictional facts in their pleadings. See Johnson v. TheHuffingtonpost.com, Inc., 21 F.4th 314, 326 (5th Cir. 2021) (affirming denial of request for jurisdictional discovery and noting that courts "will not authorize a 'jurisdictional fishing expedition' based on a plaintiff's general averments that more discovery will prove . . . jurisdiction") (internal quotations and citations omitted).  Accordingly, because Plaintiff has failed to set forth a colorable case for the existence of personal jurisdiction, his request for jurisdictional discovery should be denied.

**IV.** **PLAINTIFF'S REQUEST TO FILE AN AMENDED COMPLAINT**

For the same reasons discussed above, Plaintiff's alternative request for leave to file an Amended Complaint should be denied for failure to comply with Local Rule 7.1(a)(1).  Mr. Vickrey further submits that any such amendment of the Complaint would be futile and cannot defeat the overwhelming sworn evidence set forth by Mr. Vickrey that the Court lacks personal jurisdiction over Mr. Vickrey.  Accordingly, the Court should deny Plaintiff's alternative request for leave to file an Amended Complaint.

Respectfully submitted,

DAVID VICKREY

By His Attorneys,

MORRISON MAHONEY LLP

December 6, 2023          By      /s/ *Brian A. Suslak*
                                  Brian A. Suslak, #269917
                                  bsuslak@morrisonmahoney.com
                                  Center of New Hampshire Office Tower
                                  650 Elm Street, Suite 201
                                  Manchester, NH 03101
                                  Phone:  603-622-3400
                                  Fax:      603-622-3466

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 6, 2023.

/s/ Brian A. Suslak
Brian A. Suslak, #269917