UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert F. Kennedy, Jr.,
     Plaintiff

     v.                          Case No. 23-cv-487-SM-TSM
                                            Opinion No. 2024 DNH 004

David Vickrey,
     Defendant

## O R D E R

Plaintiff, Robert F. Kennedy, Jr., brought this defamation action in the New Hampshire Superior Court. Defendant, David Vickrey, then removed it to this court and now seeks to dismiss the case for lack of personal jurisdiction. Kennedy objects and asks for preliminary discovery and an evidentiary hearing on the jurisdictional issue. For the reasons given, Vickrey's motion to dismiss is granted and Kennedy's motion is denied.

### Standard of Review

When personal jurisdiction is contested, the plaintiff bears the burden of establishing the court's jurisdiction. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986). Allegations of jurisdictional facts are

construed in the plaintiff's favor and if, as here, the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists.  See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).

Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss.  See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  See also Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) ("Although the burden of proof is light, [the plaintiff] may not rely on the mere allegations of its complaint, but must point to specific facts in the record that support those allegations.") (emphasis supplied).  And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'"  VDI Technologies v. Price, 781 F. Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)).

The constitutional requirements for exercising personal jurisdiction over a foreign defendant have been reviewed many times and need not be repeated in detail here.  See, e.g., Douglas Co., Inc. v. My Brittany's LLC, No. 19-CV-1234-SM, 2020 WL 2768973 (D.N.H. May 28, 2020); D'Jamoos v. Atlas Aircraft Ctr., Inc., 669 F. Supp. 2d 167 (D.N.H. 2009).  It is sufficient to note that Kennedy asserts that the court may exercise "specific" (as opposed to "general") personal jurisdiction over Vickrey.  See generally Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (U.S. 2011) (noting that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (citation and internal punctuation omitted).[1]

For this court to exercise specific personal jurisdiction over Vickrey, Kennedy must show that:

> (1) [the defamation] claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state

---

[1]    To be clear, Kennedy does urge the court to assert "general" personal jurisdiction over Vickrey.  But, his argument lacks both legal and factual support and, for that reason, warrants no discussion.  Among other things, it is plain that Vickrey lacks continuous and systematic contacts with New Hampshire.  See generally Daimler AG v. Bauman, 571 U.S. 117, 127 (2014); Bluetarp Fin., Inc. v. Matrix Const. Co., 709 F.3d 72, 79 (1st Cir. 2013).  Accordingly, the court will focus exclusively on whether it may properly exercise "specific" jurisdiction over Vickrey.

represent a <u>purposeful availment</u> of the privilege of
conducting activities in that state, thus invoking the
benefits and protections of that state's laws and
rendering the defendant's involuntary presence in that
state's courts foreseeable; and (3) the exercise of
jurisdiction is ultimately <u>reasonable</u>.  Failure to
make any one of these showings dooms any effort to
establish specific personal jurisdiction.

<u>Scottsdale Cap. Advisors Corp. v. The Deal, LLC</u>, 887 F.3d 17, 20

(1st Cir. 2018) (citations omitted; emphasis supplied).  <u>See</u>

<u>also</u> <u>Cambridge Literary Props. v. W. Goebel Porzellanfabrik</u>, 295

F.3d 59, 63 (1st Cir. 2002); <u>Sawtelle</u>, 70 F.3d at 1389-95

(describing the three essential jurisdictional elements as

"relatedness," "purposeful availment," and the so-called

"Gestalt factors").


Although it is unlikely that Kennedy has made a sufficient

showing of "relatedness," the court will, in the interest of

brevity, focus on the second element of the jurisdictional test:

"purposeful availment."  That element has been described as a

"rough quid pro quo" – that is, "when a defendant deliberately

targets its behavior toward the society or economy of a

particular forum, the forum should have the power to subject the

defendant to judgment regarding that behavior."  <u>Carreras v. PMG</u>

<u>Collins, LLC</u>, 660 F.3d 549, 555 (1st Cir. 2011).  A federal

court's exercise of personal jurisdiction over a foreign

defendant "must be based on intentional conduct by the defendant

that creates the necessary contacts with the forum." <u>Walden v. Fiore</u>, 571 U.S. 277, 286 (2014).  "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." <u>Id</u>. at 290.  Consequently, the "proper question is not where the plaintiff experienced a particular injury or effect but <u>whether the defendant's conduct connects him to the forum in a meaningful way</u>." <u>Id</u>. (emphasis supplied).

### Background

On August 29, 2020, the website "Daily Kos" published a brief article or "blog post" authored by the defendant under the pseudonym "Downeast Dem."  The article provided, in its entirety, as follows:

> **Anti-Vaxxer RFK JR. joins neo-Nazis in massive Berlin 'Anti-Corona' Protest.**  Tens of thousands 'Corona-Truthers' descended on Berlin today to protest the measures implemented by Angela Merkel and her government to prevent the coronavirus spread.  What is ironic is that the preventative measures have been largely effective and life in Germany has largely returned to normal.  Compared to the United States there have been fewer than 10,000 fatalities from COVID-19 in a population of 85 million.  The protest was organized by right-wing extremist organizations - including the AfD party and various anti-Semitic conspiracy groups as well as the neo-Nazi NPD party.
>
> Among the speakers was Robert F. Kennedy Jr. who warned against the "totalitarianism" of Angela Merkel.

He sounded the alarm concerning the 5G mobile network
and Microsoft founder Bill Gates.  Referring to the
famous Berlin speech of his uncle JFK he said "Today
Berlin is is [sic] once again the front against
totalitarianism."

Protester[s] were seen carrying poster[s] urging
"Trump, Please Help" with the QAnon logo.

Exhibit 1 to Defendant's Motion to Dismiss (document no. 5-2).

See also https://www.dailykos.com/stories/2020/8/29/1973395/-
Anti-Vaxxer-RFK-JR-joins-neo-Nazis-in-massive-Berlin-Anti-
Corona-Protest (site accessed on Jan 12, 2024).  Within the

article was a link to a story published on the website for the

German daily newspaper Tagesspiegel, which also discussed the

rally in Berlin.

     Two-and-one-half years later, on April 19, 2023, Kennedy

announced his candidacy for President of the United States.  The

following month, Kennedy sent Vickrey a letter claiming the

article on the Daily Kos website defamed him.  Kennedy

threatened to sue in the Southern District of New York if

Vickrey failed to provide a monetary settlement of Kennedy's

claim.  When Kennedy received no response to that demand letter,

he filed suit in this district (likely after realizing that New

York's statute of limitations had run and New Hampshire provided

a longer period within which to file).  He filed his defamation

claim on the three-year anniversary of the article's publication

and the last day before the relevant statute of limitations
would have expired.  See generally N.H. Rev. Stat. Ann. 508:4.


Neither Kennedy nor Vickrey has any meaningful connection
to New Hampshire.  The plaintiff, Kennedy, is a resident of New
York, with a mailing address in San Diego.  The defendant,
Vickrey, is a resident of Maine, where he has lived for nearly
thirty years.  He has never resided in New Hampshire, nor does
he own any property in this state.  He wrote and published the
allegedly defamatory article from his home computer in Cape
Elizabeth, Maine.  The article itself does not reference New
Hampshire and Vickrey did not rely upon any New Hampshire
sources nor did he travel to New Hampshire to write or research
the article.  Vickrey has never engaged in any business on
behalf of, or related to, the Daily Kos website in New
Hampshire.  All of Vickrey's conduct relevant to this suit
occurred in Maine.


The sole claimed contact between Vickrey and New Hampshire
is Kennedy's assertion that Vickrey "worked for many years in
Nashua, New Hampshire, as the Vice President for SkillSoft."
Complaint (document no. 3-1) at para. 7.  But, the undisputed
facts of record reveal that Vickrey terminated his relationship
with Skillsoft more than 15 years ago and has "done no business

with any residents of New Hampshire for over 10 years."
Supplemental Declaration of David Vickrey (document no. 15-1) at
para.  Vickrey currently acts as Managing Principal of Seabridge
Advisors and has testified that, in that role, he has never
conducted business in New Hampshire or with residents of New
Hampshire.  Id. at paras. 18-19.  See also Id, at paras. 20-22
("Under FINRA regulations and in my role as Managing Principal
of Seabridge Advisors, I must be licensed in every state in
which I conduct business.  As of the date of the Supplemental
Declaration, I am licensed to conduct business in Maine,
Pennsylvania, California, New Jersey, Oregon and Georgia.  I am
not licensed to conduct business in New Hampshire.").


## Discussion

I.  Personal Jurisdiction.

Despite the apparent lack of any connection between New
Hampshire and Kennedy's defamation claim, Kennedy asserts that
this court may nevertheless exercise personal jurisdiction over
Vickrey.  To carry his burden, Kennedy must show, among other
things, that Vickrey has "purposefully availed" himself of the
privilege of conducting activities in this forum, thus invoking
the benefits and protections of New Hampshire's laws and
rendering his involuntary presence in this state's courts
foreseeable.  In cases involving the online publication of

allegedly defamatory statements, courts in this circuit apply
the so-called "<u>Calder</u> effects test" to determine whether the
purposeful availment prong of the jurisdictional analysis has
been met.  <u>See generally</u> <u>Calder v. Jones</u>, 465 U.S. 783 (1984);
<u>see also</u> <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610,
623 (1st Cir. 2001) ("we have previously recognized that
<u>Calder's</u> 'effects' test was adopted for determining <u>purposeful</u>
<u>availment</u> in the context of defamation cases.") (citation
omitted); <u>Sig Sauer, Inc. v. Jeffrey S. Bagnell, Esq., LLC</u>, 615
F. Supp. 3d 39, 44 (D.N.H. 2022) ("In the context of defamation
claims, the court applies the 'effects' test derived from <u>Calder</u>
<u>v. Jones</u> to determine whether a defendant's contacts are
sufficient to make the exercise of jurisdiction fair, just, and
reasonable.").

   To meet the requirements of the <u>Calder</u> "effects" test,
Kennedy must show that Vickrey intentionally directed his
allegedly defamatory article at this state, that he knew the
article was likely to have a significant impact on Kennedy, and
that he understood the brunt of that impact would be felt in New
Hampshire.  <u>See generally</u> <u>Hugel v. McNell</u>, 886 F.2d 1, 4 (1st
Cir. 1989) ("The knowledge that the major impact of the injury
would be felt in the forum State constitutes a purposeful
contact or substantial connection whereby the intentional

tortfeasor could reasonably expect to be haled into the forum State's courts to defend his actions.") (citing <u>Calder</u>, 465 U.S. at 789-90).

In support of his position, Kennedy says that despite residing elsewhere, he suffered injury in New Hampshire because at least one person in New Hampshire likely read the allegedly defamatory article.  More consequentially, perhaps, Kennedy says Vickrey "specifically targeted voting residents of New Hampshire, in order to derail Mr. Kennedy's Presidential campaign."  Defendant's Opposition Memorandum (document no. 13) at 6.

Kennedy has not met his burden to show that Vickrey purposefully availed himself of the privileges and protections of New Hampshire law.  Vickrey does not live or work in New Hampshire, he has no meaningful contacts with this state, he did not consult any New Hampshire sources when writing the article, he did not mention New Hampshire in the article or otherwise "direct" the article to this state, and he had no reason to anticipate that the "brunt" of the (alleged) injury to Kennedy's reputation would be felt in New Hampshire – particularly since Kennedy is not a resident of New Hampshire and his connections to New Hampshire are, at best, attenuated.  The impact Kennedy

felt in New Hampshire as a result of Vickrey's article – at
least when the allegedly defamatory article was published – was
minimal (while someone in New Hampshire may have read the
article, it was published long before Kennedy announced his
presidential run).

Kennedy's assertion that, when he published the article,
Vickrey "specifically targeted voting residents of New
Hampshire, in order to derail Mr. Kennedy's Presidential
campaign" is plainly false.  Vickrey published that article in
August of 2020 – more than two years before Kennedy announced
his intent to run for President.  Consequently, the article
could not have been intended to adversely impact Kennedy's
standing as a presidential candidate or, more specifically, his
performance in New Hampshire's 2024 presidential primary
election.  Perhaps recognizing the timing problem he faces,
Kennedy asserts that "as soon as Mr. Kennedy announced his
primary challenge, Vickrey reshared and republished his
defamatory article."  Plaintiff's Objection (document no. 13) at
5 (emphasis supplied).  See also Plaintiff's Memorandum in
Support of Evidentiary Hearing (document no. 19-1) at 5 (same).
Importantly, however, there is no evidence to support that
claim.  The citations upon which Kennedy relies merely refer to
the original publication of the article on August 29, 2020 – not

to any alleged "resharing" or "republication."  See Id. at 5
(citing the complaint at para. 11 and Vickrey's first affidavit
(document no. 5-2) at para. 7 – neither of which supports
Kennedy's factual claim).


     Parenthetically, the court notes that there are several
factual claims made in Kennedy's various memoranda that are
entirely unsupported by the citations he provides.  For example,
Kennedy repeatedly asserts that Vickrey's allegedly defamatory
article "spawn[ed] the launch of current President Biden's
write-in campaign for the State of New Hampshire Democratic
primary election."  Plaintiff's Opposition Memorandum at 6-7;
Memorandum in Support of Evidentiary Hearing at 6-7.  However,
the Daily Kos article Kennedy cites in support of that claim
says nothing of the sort and makes no connection between
Vickrey's 2020 article and the current write-in campaign related
to President Biden.  Another example can be found in Kennedy's
repeated (but entirely unsupported) assertion that Vickrey's
allegedly defamatory article "prompted the Daily Kos to actively
solicit New Hampshire residents to fund Mr. Vickrey's legal
defense of the instant action due to this New Hampshire focus."
Opposition Memorandum at 7; Memorandum in Support of Evidentiary
Hearing at 7.  Again, the citations upon which Kennedy relies

simply do not support that factual claim.  See generally Fed. R.
Civ. P. 11(b)(3).


    Returning to Kennedy's assertion that Vickrey "republished"
the allegedly defamatory article after Kennedy announced his
candidacy for president, it is conceivable, though entirely
unclear, that Kennedy relies upon the complaint's allegation
that, "the article has not been corrected nor retracted, and
still is present for New Hampshire readers to this very day."
Complaint at para. 11.  But, of course, that the article remains
accessible to readers does not mean that the defendant
"republished" it.  See generally Restatement (Second) of Torts
§ 577A, Single and Multiple Publications (1977); 1 Law of
Defamation § 4:93.60, Liability for Republication — Single
Publication Rule — Hyperlinks to Previously Published Defamatory
Material, (2d ed.).  See also In re Philadelphia Newspapers,
LLC, 690 F.3d 161, 174–75 (3d Cir. 2012), as corrected (Oct. 25,
2012) ("The single publication rule advances the statute of
limitations' policy of ensuring that defamation suits are
brought within a specific time after the initial publication.
Websites are constantly linked and updated.  If each link or
technical change were an act of republication, the statute of
limitations would be retriggered endlessly and its effectiveness
essentially eliminated.  A publisher would remain subject to

suit for statements made many years prior, and ultimately could
be sued repeatedly for a single tortious act the prohibition of
which was the genesis of the single publication rule.").

Finally, it is, perhaps, worth noting that the judicial
opinions upon which Kennedy relies in support of his argument in
favor of exercising personal jurisdiction over Vickrey are
plainly distinguishable.  For example, in de Laire v. Voris, No.
21-CV-131-JD, 2021 WL 1227087, at *1 (D.N.H. Apr. 1, 2021), this
court was presented with a defamatory article published online
that was directed to this forum and concerned a resident of New
Hampshire.  Additionally, when preparing that article, the
author traveled to and interviewed residents of New Hampshire.
Those critical facts linking the author's conduct to the forum
state are noticeably absent in this case.  The same is true for
several other cases upon which Kennedy relies, including Calder.

In short, Kennedy has not pointed to any precedent (binding
or persuasive) in which a court sustainably found it could
exercise personal jurisdiction over a party with such de minimus
contacts with the forum state as those of Vickrey.  Indeed,
virtually none of the facts upon which the Calder court rested
its jurisdictional determination are present in this case –
perhaps the most significant of which was that the plaintiff in

Calder was a resident of the forum state and, therefore, suffered significant reputational injury there.  See generally Calder, 465 U.S. at 789-90 ("[Petitioners'] intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent.  And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article.") (emphasis supplied).

Given the facts and arguments presented, it is plain that Kennedy has not shown that Vickrey's contacts with New Hampshire represent a purposeful availment of the privilege of conducting activities in this state.  Consequently, the exercise of specific personal jurisdiction over Vickrey in this forum would not comport with constitutional requirements of due process.

II.  Jurisdictional Discovery.

In support of his motion for jurisdictional discovery, Kennedy has shown neither a "colorable claim of jurisdiction," nor a "non-frivolous dispute about facts that may yield a

sufficient predicate for in personam jurisdiction." <u>Motus, LLC</u>
<u>v. CarData Consultants, Inc.</u>, 23 F.4th 115, 128 (1st Cir. 2022).
<u>See also</u> <u>Nordica USA Corp. v. Ole Sorensen</u>, 475 F. Supp. 2d 128,
134 (D.N.H. 2007) ("The motion [for jurisdictional discovery]
must be timely and properly supported, must proffer a colorable
claim for jurisdiction, and must present facts to the court
which show why jurisdiction would be found if discovery were
permitted.  Plaintiffs must specify the type of evidence they
think they will find and provide detailed descriptions of any
additional pertinent avenues of inquiry that they hope to
pursue.") (citations and internal punctuation omitted). <u>See</u>
<u>generally</u> <u>Multiple Energy Techs. v. Kymira, Ltd.</u>, No. 22-CV-209-
SM, 2022 WL 16797377 (D.N.H. Nov. 8, 2022) (granting plaintiff's
request for jurisdictional discovery).


     Accordingly, in the exercise of its discretion, the court
denies Kennedy's motion for an evidentiary hearing and
jurisdictional discovery.


### Conclusion

     For the foregoing reasons, as well as those set forth in
defendant's legal memoranda (documents no. 5 and 15),
defendant's Motion to Dismiss (**document no. 4**) is granted.

Plaintiff's Motion for Evidentiary Hearing and Jurisdictional
Discovery (**document no. 19**) is denied.


    The Clerk of Court shall enter judgment in accordance with
this order and close the case.



    **SO ORDERED.**

                                    _____
                                    Steven J. McAuliffe
                                    United States District Judge

January 22, 2024

cc:  Counsel of Record

17