UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert F. Kennedy, Jr.,
        Plaintiff

        v.                          Case No. 23-cv-487-SM-TSM
                                    Opinion No. 2024 DNH 033

David Vickrey,
        Defendant


**O R D E R**


On January 22, 2024, the court entered an order dismissing plaintiff's complaint for lack of personal jurisdiction. Judgment was entered on the same day. Thirty-one days later, plaintiff filed a Notice of Appeal. Defendant promptly filed a Motion to Strike that notice as untimely. In response, plaintiff filed a Motion to Extend Time to File a Notice of Appeal. Those motions are now ripe for review.


For the reasons discussed, plaintiff's Motion to Extend Time to File a Notice of Appeal is denied and defendant's Motion to Strike is granted.

**Governing Law**

A litigant (other than the federal government) seeking to appeal an order of the district court must file a notice of appeal with the district court clerk "within 30 days after the entry of the judgment or order appealed from."  Fed. R. App. P. 4(a)(1)(A).  See also Fed. R. Civ. P. 6(a)(1) (establishing how and which days are counted under the Federal Rules).  Unless provided otherwise by statute, local rule, or court order, the last day on which to file such a notice of appeal ends at "midnight in the court's time zone."  Fed. R. Civ. P. (6)(a)(4). This court's local rules are consistent with that provision. See Local Rule 6.1 ("The last day for documents submitted using the 24-hour depository shall end at midnight local time unless a different time is established by court order.").[1]

Plaintiff missed the midnight filing deadline for his Notice of Appeal by a few hours.  The court is, however, vested with discretion to permit that late filing if two conditions are

---

[1]    The midnight filing deadline is also posted on the court's website and available to all members of the public. https://www.nhd.uscourts.gov/ecf-info/faq-technical (Response to FAQ "When is ECF available to accept filings?" states that, "Please note that all electronic filings must be completed before midnight local time in order to be considered timely filed that day unless a different time is established by court order.") (emphasis supplied).

met.  First, the party seeking an extension of time must move for such relief no more than 30 days after the originally-prescribed deadline for filing the Notice of Appeal has passed (plaintiff has done so in this case).  Second, the party seeking such relief must show either "excusable neglect" or "good cause" for its failure to file the Notice of Appeal in a timely manner. Fed. R. App. P. 4(a)(5)(A).  See generally Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 630 (1st Cir. 2000) (discussing the distinction between "excusable neglect" and "good cause"). Here, plaintiff asserts that his failure to timely file his Notice of Appeal was the product of "excusable neglect."[2]

In 1993, the Supreme Court established the framework by which federal courts determine whether conduct constitutes "excusable neglect."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993).  See also Virella-Nieves v. Briggs & Stratton Corp., 53 F.3d 451, 454 n.3 (1st Cir. 1995) (holding that "Pioneer's exposition of excusable

---

[2]   Although his motion asserts that the untimely filing was the product of both excusable neglect and good cause, plaintiff's counsel has presented no argument on the latter point.  Instead, he has focused entirely on whether his conduct constitutes excusable neglect under the factors outlined in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993).  See Plaintiff's Memorandum (document no. 28-1) at 4-8.  Accordingly, the court will do the same.

neglect, though made in the context of late bankruptcy filings, applies equally to Fed. R. App. P. 4(a)(5)").  In creating that framework, the Court (over the dissent of four Justices) focused not only on the nature and culpability of the conduct at issue, but also on the <u>effect</u> that conduct had on the opposing party and the judicial system.  That approach can lead to the following somewhat anomalous situation: specific conduct may be deemed "excusable neglect" in one setting, but that very same conduct may not meet that threshold in a different setting - all depending upon the <u>impact</u> such conduct had upon the other litigants and the court.  <u>See generally</u> <u>Pioneer Inv. Services</u>, 507 U.S. at 400 (O'Connor, J., dissenting) (pointing out this oddity and noting that "Whether the failure resulted from excusable neglect depends on the nature of the omission itself, both in terms of cause and culpability.  Consequently, until the reason for the omission is determined to be sufficiently blameless, the consequences of the failure, such as the effect on the parties or the impact on the judicial system, are not relevant.").

Justice O'Connor's point, while a cogent one, was not embraced by the Court and the multifactor balancing test that emerged from the majority opinion in <u>Pioneer</u> is an equitable one,

> taking account of all relevant circumstances
> surrounding the party's omission.  These include . . .
> the danger of prejudice to the [non-movant], the
> length of the delay and its potential impact on
> judicial proceedings, the reason for the delay,
> including whether it was within the reasonable control
> of the movant, and whether the movant acted in good
> faith.

Pioneer Inv. Services, 507 U.S. at 395 (footnote and citation

omitted).  See also Id. at 392 (stating that "'excusable

neglect' is a somewhat 'elastic concept'").  Nevertheless, as

the court of appeals for this circuit has repeatedly noted,

> Although the Pioneer standard is more forgiving than
> the standard in our prior case law, there still must
> be a satisfactory explanation for the late filing.  We
> have observed that the four Pioneer factors do not
> carry equal weight; the excuse given for the late
> filing must have the greatest import.  While
> prejudice, length of delay, and good faith might have
> more relevance in a closer case, the reason-for-delay
> factor will always be critical to the inquiry.

Graphic Communications Intern. Union, Local 12-N v. Quebecor

Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir. 2001)

(citation and internal punctuation omitted).  See also Skrabec

v. Town of N. Attleboro, 878 F.3d 5, 9 (1st Cir. 2017) ("While

each potential [Pioneer] factor should be weighed, there is

ultimately a thumb on the scale because within the constellation

of relevant factors, the most important is the reason for the

particular oversight.") (citation and internal punctuation omitted).

## Discussion

Counsel for plaintiff works in California.  He filed the Notice of Appeal one day late, on February 22, 2024, at 2:31 a.m. eastern time (which, as he points out, was February 21, 2024, at 11:31 p.m. pacific time).  In support of the assertion that his delay in filing the notice of appeal was the product of "excusable neglect," counsel has represented that he "commenced" the process of filing the notice of appeal on February 21, at approximately 9:30 p.m. EST (6:30 p.m. pacific time), but experienced "wifi connectiv[ity] and other technical" problems that prevented him from completing that process.  Affidavit of Robert Barnes (document no. 28-2) at para. 2.  And, because he "neglected to adequately consult" either the federal or local rules regarding the timing of court filings, id., he mistakenly believed that he still had roughly five and one-half hours (that is, until midnight in California) to submit the notice of appeal.  In short, based on his misreading (or failure to read) the governing procedural rules, counsel believed that there was no immediate rush to file the Notice of Appeal in order to meet the midnight deadline.

A.   <u>Internet and Technical Issues</u>.

It would seem that counsel is advancing two explanations for his late filing, either or both of which he believes is sufficient to excuse his untimely filing.  The first - "wifi connect[ivity] and other technical problems" - is rather vague and insufficiently described to warrant the relief sought. Counsel does not identify the nature of those problems, nor does he describe any efforts he undertook to resolve them before the filing deadline or whether those issues were (or could have been) remedied before midnight eastern time.  Indeed, counsel's affidavit on that point seems almost intentionally indefinite.[3]

Even if counsel had described those issues (and his efforts to resolve them) in adequate detail, courts have typically refused to characterize internet connectivity issues as "excusable neglect."  <u>See, e.g.</u>, <u>Airway Leasing, LLC v. MTGLQ Invs., L.P.</u>, No. CV 18-516JJM, 2021 WL 1575208, at *2 (D.R.I. Apr. 22, 2021) ("Courts have long been skeptical that counsel's difficulty in making a timely electronic filing can ever

---

[3]   Counsel does not press the issue of "wifi connect[ivity] and other technical problems."  Had he done so (and if it were material to the court's decision), the court likely would have required a more detailed explanation and some substantiation (e.g., outage logs from his ISP and local Wi-Fi router).  <u>See generally</u> Order on Motion to Dismiss (document no. 21) at 12-13.

reasonably be viewed as excusable neglect.") (collecting cases);
<u>Shifers v. Arapahoe Motors, Inc.</u>, No. 17-CV-01753-CMA-KLM, 2018
WL 6620866, at *4 (D. Colo. Dec. 18, 2018) (lack of internet
connectivity not deemed "excusable neglect," particularly where
counsel waited until the last moment to try to file the
pleading) (collecting cases); <u>Smith v. Look Cycle USA</u>, 933 F.
Supp. 2d 787, 791 (E.D. Va. 2013) (finding that "counsel's
reason for untimely filing - technical problems with counsel's
computer - fails to demonstrate excusable neglect").  <u>See
generally</u> <u>Magraff v. Lowes HIW, Inc.</u>, 217 F. App'x 759, 761
(10th Cir. 2007) (rejecting counsel's asserted "excusable
neglect" and noting that "counsel deliberately waited until the
end of the thirty-day period to file the notice of appeal,
increasing the risk that unforeseen events, including illness,
might interfere with his ability to meet the deadline.").[4]

     And, finally, counsel practicing in this district are
specifically told that deadlines will not be extended when an

---

[4]     The Notice of Appeal was not the first document in this
case that counsel filed (or attempted to file) at the last
moment.  As noted in the court's order of dismissal (document
no. 21), counsel filed the complaint on the day before the
three-year limitations period expired.  He also filed his
objection to defendant's motion to dismiss at 11:32 pm eastern
time, on the last day permitted (after that deadline had already
been extended by court order).

untimely electronic filing is caused by internet or other
technical issues with counsel's computer equipment.  In other
words, problems with counsel's internet access or Wi-Fi
performance do not constitute either "excusable neglect" or
"good cause" to excuse an untimely filing.

> **Filing User Systems Failure**.  <u>A problem with the</u>
> <u>Filing User's systems or equipment</u> shall not
> constitute a technical failure [with the court's
> CM/ECF system] nor excuse an untimely filing.  In such
> circumstances, however, a Filing User may file the
> document conventionally with a <u>declaration explaining</u>
> <u>how the systems failure precluded filing in ECF</u>.

Administrative Procedures for Electronic Case Filing, Appendix A
to Local Rules of the United States District Court for the
District of New Hampshire ("AP"), Rule 2.10(f).  Here, counsel
for plaintiff failed to file the Notice of Appeal in a timely
manner and then neglected to comply with AP 2.10 - most notably,
by failing to include with his late-filed Notice of Appeal a
sworn declaration explaining the reason(s) for the delay.

   B.   <u>Failure to Read or Understand Applicable Rules</u>.

   Fundamentally, then, counsel's late filing was caused by
his acknowledged lack of familiarity with both the Federal Rules
of Civil Procedure and this court's Local Rules and
Administrative Procedures governing the timing of court filings.
He was admittedly unaware that he was required to file the

Notice of Appeal before midnight (local time) on February 21, 2024, nor was he aware of the filing procedure in the event internet connectivity or Wi-Fi problems interfered with making a timely filing.  But, as the majority in Pioneer noted, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" Pioneer Inv. Services, 507 U.S. at 392.  Plainly, something more than merely a misreading (or unawareness) of governing rules is needed to support a claim of "excusable neglect" - something the court of appeals for this circuit has called "unique or extraordinary circumstances."

Indeed, the court of appeals has reiterated that point often:

> Even in the wake of Pioneer, therefore, when a party's or counsel's misunderstanding of clear law or misreading of an unambiguous judicial decree is the reason for the delay in filing the notice of appeal, we have continued to uphold findings of "no excusable neglect" where the court cited the absence of unique or extraordinary circumstances.
>
> In Mirpuri v. ACT Manufacturing, Inc., 212 F.3d 624, 631 (1st Cir. 2000), counsel misread a clear statement in the district court's memorandum decision dismissing plaintiff's complaint "with finality," id. at 627, as leaving open the possibility of subsequent amendment, see id. at 630.  We indicated that the memorandum decision had "explained in the most transparent of terms the court's intention to act with 'finality in this case,'" and concluded that "a misunderstanding that occurs because a party (or his counsel) elects to

read the clear, unambiguous terms of a judicial decree
through rose-colored glasses cannot constitute
excusable neglect." <u>Id</u>. at 631.  We held that
"because the plaintiffs' failure to file a timely
notice of appeal was <u>not excused by any extraordinary</u>
<u>circumstances</u>, the district court did not abuse its
discretion in denying their motion for an extension of
time." <u>Id</u>.

Most recently, in <u>Hospital del Maestro</u>, we affirmed
the denial of an excusable neglect claim where
appellant had filed exceptions to the decision of an
administrative law judge with the National Labor
Relations Board one day late.  263 F.3d at 175.
Appellant had misunderstood the Board's rule requiring
that mailings be postmarked before, not on, the due
date.  <u>Id</u>. at 174.  We held that "we have no basis for
finding appellant's neglect 'excusable' when there is
no proffered reason that would justify, or even
plausibly explain, its misreading of the rules," the
meaning of which we described as "plain" and
"unambiguous." <u>Id</u>. at 175.  We concluded: "the
favorable juxtaposition of the other Pioneer factors
does not, therefore, excuse appellant's oversight."
<u>Id</u>.

Viewed together, <u>Mirpuri</u> and <u>Hospital del Maestro</u>
illustrate that a trial judge has wide discretion in
dealing with a litigant whose predicament results from
blatant ignorance of clear or easily ascertainable
rules, and, if the trial judge decides that such
neglect is not excusable in the particular case, we
will not meddle <u>unless we are persuaded that some</u>
<u>exceptional justification exists</u>.  <u>See</u> <u>Mirpuri</u>, 212
F.3d at 631; <u>Hospital del Maestro</u>, 263 F.3d at 175.

<u>Graphic Communications</u>, 270 F.3d at 6–7 (footnote omitted;

emphasis supplied).

        Given that precedent, it is not surprising that this court

has routinely concluded that, standing alone, the mere failure

to properly read or understand an applicable rule or statute

does not constitute "excusable neglect."  See, e.g., AMC Mortg. Servs., Inc. v. Chase, No. 08-CV-313-JL, 2008 WL 4613867, at *3–4 (D.N.H. Oct. 15, 2008) ("AMC Mortgage was simply mistaken in its calculation of the end date of the appeal period. Therefore, as applicable precedent directs, there was no excusable neglect.").  See also Premier Cap., Inc. v. DeCarolis, No. CIV. 01-126-M, 2002 WL 47134, at *9 and n.4 (D.N.H. Jan. 2, 2002); United States v. $230,963.88 in U.S. Currency, More or Less, No. CIV. 00-378-B, 2000 WL 1745130, at *3-4 (D.N.H. Nov. 16, 2000).

In the end, then, while the other equitable factors identified in Pioneer may rest in relative equipoise or even weigh in favor of the equitable relief plaintiff seeks - particularly since plaintiff missed the filing deadline by only a few hours - that is of little moment in this case.  The absence of any "pardonable reason why it misconstrued the plain, unambiguous meaning of the [applicable federal and local] rules" is sufficient, in the court's view, to warrant denial of plaintiff's motion, and "the favorable juxtaposition of the other Pioneer factors does not, therefore, excuse the [plaintiff's] oversight."  Hospital del Maestro v. N.L.R.B., 263 F.3d 173, 175 (1st Cir. 2001).  See also Dimmitt v. Ockenfels, 407 F.3d 21, 24 (1st Cir. 2005) ("[A]s we have repeatedly held,

even under the flexible standard prescribed by <u>Pioneer</u>,
counsels' inattention or carelessness, such as a failure to
consult or to abide by an unambiguous court procedural rule,
normally does not constitute 'excusable neglect.'") (citations
and internal punctuation omitted).


### Conclusion

Counsel's failure to timely file the Notice of Appeal was
the product of his acknowledged failure to read and/or properly
understand both the governing federal and local rules.  There
are no "unique or extraordinary circumstances" at play here.
<u>See</u> <u>Graphic Communications</u>, 270 F.3d at 6; <u>Mirpuri</u>, 212 F.3d at
631.  To find that there is excusable neglect in this situation
"would only serve to condone and encourage carelessness and
inattention in practice before the federal courts."  <u>AMC Mortg.
Servs.</u>, 2008 WL 4613867, at *4 (quoting <u>Graphic Communications</u>,
270 F.3d at 8).


For the foregoing reasons, as well as those set forth in
defendant's legal memoranda (documents no. 31 and 32),
plaintiff's Motion to Extend Time to File a Notice of Appeal
(**document no. 28**) is denied.  Defendant's Motion to Strike
Notice of Appeal (**document no. 26**) is granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 17, 2024

cc:  Counsel of Record